The Board of Commissioners of Montgomery County v. Ristine, Adm'r.

No. 14,194.

THE BOARD OF COMMISSIONERS OF MONTGOMERY COUNTY
v. RISTINE, ADMINISTRATOR.

COUNTY COMMISSIONERS.—*County Asylum.*—*Insane Person.* — *Contract for Care and Support.*—*Invalidity of.*—*Quantum Meruit.*—A contract made by the board of county commissioners with a guardian for the care and support of his insane ward in the county asylum at an agreed price to be paid out of the ward's estate, is invalid, and no recovery can be had thereon against the ward's estate, nor can there be a recovery by the county on the *quantum meruit.* A person who is admitted into a county asylum, organized for the support of the poor, can not be charged therefor, either on an express or implied contract. BERKSHIRE, C. J., and OLDS, J., dissent.

From the Montgomery Circuit Court.

*J. H. Burford*, for appellant.

*P. S. Kennedy, S. C. Kennedy, T. H. Ristine* and *H. H. Ristine*, for appellee.

MITCHELL, J.—In the year 1873 John W. Hulett was adjudged a person of unsound mind, incapable of managing his estate, and was accordingly placed under guardianship by order of the circuit court of Montgomery county. At the September term, 1874, the guardian appeared before the board of commissioners of the county and represented that his ward was possessed of an estate amply sufficient to pay for his board and care, and that as guardian he was willing to enter into an agreement with the county board to pay three dollars a week for the board and care of his ward. It was thereupon agreed between the board and the guardian, that the insane ward should be received into the county asylum for the poor, to be boarded and cared for under the supervision of the superintendent of the asylum at the price of three dollars per week, and an order was made upon the commissioners' record accordingly. The ward died in 1887, leaving an estate valued at $3,000. The board of commissioners thereupon filed a claim against his estate, in which

The Board of Commissioners of Montgomery County *v.* Ristine, Adm'r.

they set out the foregoing order and agreement, and alleged that the board had fully complied with its agreement, and that there remained due the county something over four hundred dollars on account of board and care furnished the decedent. By way of inducement it is alleged that the insane ward was wholly incapable of taking care of himself, that he was dangerous and indecent in his habits, that the guardian had no suitable or safe place in which to confine him, that he had been unable, after repeated efforts, to procure anyone to take charge of and care for him, and that he thereupon made application to the board of commissioners, as above, to have him admitted into the county asylum, where a suitable place had been prepared to keep and take care of such persons as he was.

The question is whether or not the board of commissioners was entitled to recover for what remained unpaid at the death of the ward, either upon the contract specially pleaded, or for the value of the board and necessaries furnished as upon an implied promise to pay.

The facts as presented make it apparent that the person against whose estate this claim is being prosecuted was insane and dangerous to the community, within the meaning of the statute.

One whose insanity is of such a character as to lead him to make indecent exposure of his person in public, and who, on that account, becomes a constant menace to public morality and decency, is as certainly dangerous to the community, if suffered to remain at large, as is one who threatens physical injury to others. The statute (sections 5142 to 5150, R. S. 1881) makes provision whereby such persons may be restrained under the order of the circuit court at the public expense. Provision is also made whereby the public treasury may be reimbursed out of the estate of a person dangerously insane, in case he be possessed of an estate.

This statute looks to the protection of the public from those whose insanity makes them dangerous to the commu-

nity. It has in it no feature of charity to the individual, nor was it enacted with a view to benevolence. If proceedings had been taken under this statute, and the person adjudged insane and dangerous to the community had become a charge upon the public treasury, it would have been within the power of the county commissioners, by the very terms of the statute, to collect the charges out of the estate of the insane person. Section 5147, R. S. 1881. No regard was paid to the above statute. The constitution provides for the establishment and support of certain benevolent institutions, and confers power upon county boards " to provide farms as an asylum for those persons who, by reason of age, infirmity, or other misfortune, have claims upon the sympathies and aid of society." Section 3, article 9, Constitution.

The Legislature, in devising a charitable scheme for the care and support of the poor, enacted that " Every county should relieve and support all poor and indigent persons lawfully settled therein," and that it should be lawful for county commissioners to purchase a tract of land, and to build, establish, and organize an asylum for the poor, and employ some humane and responsible person to take charge of them. Sections 6069, 6090, R. S. 1881. The statute provides that all poor persons who have become permanent charges on the county may be received into and supported in the county asylum, and the county commissioners are authorized to assess a tax for the support of the poor and for the establishment and maintenance of an asylum ; but we find no authority for a county board to admit any one into the county asylum by contract, or to receive pay for the care and support of any one admitted into the institution. The organization and maintenance of county asylums for the poor, and the care and support of those who are admitted into them, is a part of a scheme of unmixed public charity and benevolence which was inaugurated under the express sanction of the Constitution.

An institution organized for the avowed purpose of be-

stowing or administering charity, unless specially authorized by its charter to do so, can not contract to bestow what purports to be a benefaction for a price, or to dispense charity for pay. The statute nowhere authorizes county commissioners to enter into contracts for the care and support of persons in the asylums organized for the care and support of the poor; nor is there any implication that persons who are admitted into those asylums can be so admitted by contract with the county commissioners.

In *Board, etc.,* v. *Hildebrand,* 1 Ind. 555, it was held that the provision made by law for the support of the poor was purely charitable, and that a husband could not be held liable for board, lodging and support furnished in the county asylum to his wife. Again, in *Board, etc.,* v. *Schmoke,* 51 Ind. 416, it was held that a contract made by the husband of an insane wife with a board of commissioners for her support in the county asylum was invalid, and that no recovery could be had by the county, even though it had performed the contract. The case first cited was decided in 1849, before the adoption of the present Constitution. The doctrine distinctly enunciated in that case was that county commissioners had no power to convert an institution that was intended as a public charity into a boarding-house for such as wished accommodation for themselves or for their relatives for pay. A convention to revise our Constitution, and more than twenty successive Legislatures, have met and adjourned since that decision was promulgated, and all have accepted it as a correct exposition of the spirit and purpose of the Constitution and laws under which provision has been made for the relief of the poor. All the existing laws in relation to those asylums have either been enacted or re-enacted since the decisions above mentioned were promulgated, and yet there is nowhere, even by implication, any power conferred upon county boards to admit persons of any degree or station into a county asylum for pay or by contract. More than forty years ago this court declared, in effect, that these institutions were organized for

purely charitable and benevolent purposes, that the work done in them was to be the part of the public in the great labor of love for the unfortunate, that was to be done without money and without price, and the Legislature, the immediate representative of the people, during all this time has accepted the decisions of this court as correct interpretations of the spirit and purpose of the Constitution and laws.

After this great lapse of time we are asked to overturn these decisions thus acquiesced in, so as to authorize an institution, that has all this time been regarded as a noble public charity, to be converted, in part, at least, into a house of private entertainment, by contract with the county commissioners. If county commissioners may make a contract with the guardian of an insane ward, or the husband of an insane wife, to care for and board the ward or wife, they may enter into contracts with guardians of minor children to have them boarded at the asylum for the poor at an agreed price, or they may enter into contracts with husbands whose wives are not insane for a like purpose. When it is thought advisable to change the policy of the State, so as to authorize county asylums to be converted into places for confining and keeping insane persons by contract, or for boarding those who are not agreeable to other members of the family, the change ought to be made by the Legislature, and not by the courts.

Our conclusion is that the contract relied on was unauthorized, and beyond the power of the county commissioners, and that no recovery can be had thereon. Nor can there be any recovery upon the *quantum meruit,* as upon an implied contract or promise.

It is a thoroughly settled proposition that where one is received into a charitable institution for support or treatment, the law raises no implied obligation to pay in the absence of a contract. Where an individual is received into an institution established solely for benevolent purposes, the law refers his reception, and the relief administered to him,

to motives of charity, unless the charter or by-laws of the society or institution provide that compensation may and shall be charged.   An institution or society, no more than an individual, can assume to be dispensing charity and at the same time create a pecuniary obligation against one to whose necessities it ministers.   The wayfaring man who fell among thieves may have been rich as Dives, but he came under no implied obligation to reimburse the Good Samaritan, who set an example of charity by pouring oil and wine into his wounds and by lodging him at an inn at his own expense.   Services which were intended to be gratuitous at the time they were rendered can not afterwards be used as the basis of an implied promise to pay.   *Ramsey* v. *Ramsey,* 121 Ind. 215 (222).

In *St. Joseph's Orphan Society* v. *Wolpert,* 80 Ky. 86, it appeared that a charitable institution, organized for the purpose of educating and maintaining orphan children, sought to recover from a guardian the value of raising and maintaining his wards, the children of a deceased soldier.   The wards had been received by the society with the avowed purpose of bestowing upon them an education as a matter of charity.   Learning afterwards that the guardian had in his hands a considerable sum of money which had been paid him by the United States government as pension money, the society brought suit.   It was held that the society having been created for charitable and benevolent purposes, it could not recover for board, care and education of orphans, whose control it had taken with the avowed purpose of bestowing charity.

County asylums, having, as we have seen, been organized for purposes of charity and benevolence only, the commissioners having no power to admit persons by contract for pay, the law will not raise an implied obligation or promise on the part of one admitted to pay for the value of his board and support.   The law will imply that he was admitted through motives of charity.   We are aware that there are

decisions in some of the States that seem to hold a contrary view. Courts in other States, however, hold to the views enunciated by this court in the cases cited. Our opinion is that the subject is not now open to the courts of this State for further examination, until the Legislature shall have intervened. Whether an overseer of the poor, who has furnished temporary relief to a wife or child, wrongfully deserted by a husband or parent, can recover from the person in default upon an implied or constructive promise, we do not inquire. What we hold is that a person who is admitted into a county asylum, organized for the support of the poor, can not be charged therefor either upon an express or implied contract.

The judgment is affirmed, with costs.

Filed June 5, 1890.

### DISSENTING OPINION.

BERKSHIRE, C. J., and OLDS, J.—We are compelled to dissent from the opinion of the court, and briefly state some of the reasons which lead us to a different conclusion.

Conceding that under the law the contract alleged in the appellant's complaint was one which it had no legal right to make, it does not follow that the appellant might not enforce it or recover upon a *quantum meruit*.

The guardian of the decedent might, under the circumstances, enter into such a contract, and after his ward was taken into the county asylum and cared for pursuant to the contract, it did not lie in his mouth during the lifetime of the decedent, nor of his administrator thereafter, to deny the authority of the appellant to enter into the contract.

It appears that the parties all acted in good faith, and in the light of the circumstances, that which was done was for the best, not only for the decedent but for the public.

The decedent was an insane person, and his condition was such that the public good, as well as his own benefit, required that he be confined. He had an ample estate to com-

pensate those who might care for him, but no private person could be found prepared and willing to assume the burden and responsibility.

The appellant was so situated that it could take the decedent to its poor asylum and give him proper care and attention without in any way abridging the rights or privileges of others supported at said institution. Under such circumstances we can imagine no satisfactory reason why the appellant should not be reimbursed. Every element of an estoppel is present. The opinion of the court in the main rests upon two former cases decided by this court. *Board, etc.,* v. *Hildebrand,* 1 Ind. 555; *Board, etc.,* v. *Schmoke,* 51 Ind. 416.

The last of these cases was decided by a divided court, two out of five of the judges dissenting.

Not only are we of the opinion that these cases are not sound in principle, but we find them to be out of line with the great weight of authority. See *Howard* v. *Trustees, etc.,* 10 Ohio, 365; *Trustees, etc.,* v. *Demott,* 13 Ohio, 104; *Inhabitants, etc.,* v. *Turner,* 14 Mass. 227; *Jasper County* v. *Osborn,* 59 Iowa, 208; *Inhabitants, etc.,* v. *Stratton,* 128 Mass. 137; *City of Bangor* v. *Inhabitants, etc.,* 71 Maine, 535; *Town of Dakota* v. *Town of Winneconne,* 55 Wis. 522; *Directors, etc.,* v. *Manlany,* 64 Pa. St. 144; *Turner* v. *Hadden,* 62 Barb. 480; *Wertz* v. *Blair County,* 66 Pa. St. 18; 2 Kent, 148; *Commissioners, etc.,* v. *Directors, etc.,* 7 Ohio St. 65; *Goodale* v. *Lawrence,* 88 N. Y. 513; *Inhabitants, etc.,* v. *Lyons,* 131 Mass. 328.

In our opinion the judgment ought to be reversed.

Filed June 5, 1890.