Directors of the Poor and of the House of Employment of Montgomery Co. *v.* Nyce, Committee of Malone, Appellant.

*Poor laws—Liability of pauper's estate for past support—Act of June 13, 1836, P. L. 548.*

Under the act of June 13, 1836, P. L. 548, an estate acquired by a pauper after he has become a charge on the public is liable for his previous maintenance.

Argued Jan. 31, 1894.  Appeal, No. 78, Jan. T., 1894, by defendant, Samuel E. Nyce, Committee, etc., of Edward Malone, a lunatic, from judgment of C. P. Montgomery Co., March T., 1892, No. 155, for plaintiff, on case stated.  Before GREEN, WILLIAMS, McCOLLUM, DEAN and FELL, JJ.  Affirmed.

Case stated.

The case stated was as follows :

" Edward Malone, the above named lunatic, being then sane and a pauper without means, was admitted to the almshouse of Montgomery county on May 24, 1877, and remained there for two months and twenty-seven days, to wit: until Aug. 20, 1877, when he was discharged.  He was again admitted on Oct. 12, 1877, and remained there for a period of ten years, seven months

and twenty-six days, to wit: until June 7, 1888, when having become insane he was removed by the said plaintiff from the said almshouse to the hospital for the insane at Norristown, where he still continues an inmate thereof. During all the said time he was in the said almshouse, he was there as a pauper inmate of said institution. In June of 1891 Jane Malone of the city of Philadelphia died; by her last will and testament duly approved giving a legacy amounting to $3,100 to the said Edward Malone, which said sum came into the hands of the said Samuel E. Nyce as the committee of him. The plaintiffs claim to recover the sum of $1,956, being for board and cost of maintenance for the period of 561 weeks in said almshouse at $3.00 per week, and for board and costs of maintenance for 156 weeks at $1.75 per week in said hospital for the insane. The defendant pleads non assumpsit, non assumpsit infra sex annos. Since June 7, 1891, the said Edward Malone has been maintained out of his own estate.

"If upon these facts and under said pleas the court shall be of the opinion that the plaintiff is entitled to recover, then judgment to be entered for the plaintiff for such sum as the court shall determine. Otherwise," etc.

The following opinion was filed by SWARTZ, P. J.:

"Numerous authorities may be cited to show that at common law supplies furnished to a pauper are gratuities, for the payment of which no promise is implied: Deer Isle v. Eaton, 12 Mass. 328; Stow v. Sawyer, 3 Allen, 515; Kennebunkport v. Smith, 22 Me. 445; Albany v. McNamara, 117 N. Y. 168; Benson v. Hitchcock, 37 Vt. 567; Charlestown v. Hubbard, 9 N. H. 195.

"It is true where one voluntarily furnishes food to another, the contractual relationship of debtor and creditor does not arise. Whether this principle should have any application where the supplies must be furnished upon the demand of the pauper, is not so clear. Why should the recipient of the supplies under such circumstances escape payment when in funds? If he is compelled to pay he simply does that which in good morals he ought to do voluntarily. His payment enables the county to enlarge its liberality in other needy cases. It is said that such repayment is in conflict with the policy of our poor laws and our idea of charity. But it seems to us there is some-

thing radically wrong with the theory that a patient may leave an institution with a large estate of his own in his pocket without any legal obligation resting upon him to pay for the food he consumed. Such treatment of the patient is not calculated to stimulate his honesty or improve his citizenship. Nor does the demand for reimbursement under such circumstances detract from the charity. If the pauper receives the maintenance upon the condition that he shall pay when able, it answers his needs just as much as if there were no obligation to pay under any conditions.

"Whether there is any obligation to pay without a statute creating the liability is immaterial, for our act of 1836, by section 33, fixes the obligation to pay. The act declares, 'it shall be lawful for the directors of the poor of any county and for the overseers of any district, as the case may be, in which any person shall have become chargeable, to sue for and recover any real and personal estate belonging to such person, and to sell or otherwise dispose of the personal property, and to collect and receive the rents and profits of the real estate, and to apply the proceeds or so much thereof as may be necessary to defray the expenses incurred in the support and funeral of such person.'

"If this act does not cover the case before us it is difficult to see the purpose of the enactment. The man who has an estate sufficient to provide for his maintenance at the time he makes application for charity, is not in fact a pauper, and the authorities are not obliged to furnish the support. If he gains admission through false statements his estate is liable without any statutory provision. Stow v. Sawyer, 3 Allen, 515; 117 N. Y., supra. There are no doubt cases of emergency where it is the duty of the authorities to furnish aid before there is any opportunity to inquire into the condition of the man's estate, but it cannot be that the act was intended to protect the county against these exceptional cases alone.

"The act declares that the directors of the poor may take the estate to 'defray the expenses incurred;' they are not limited to the expenses which may be incurred in the future. Nor is there anything in the act limiting them to the property which the pauper had at the time the expenses were incurred. The act seems to contemplate a case similar to the one before us.

The 'person shall have become chargeable,' that is, he was chargeable at the time he was admitted because he had no estate; the estate is to be applied to expenses incurred, not the estate which he had when the supplies were furnished, because then he had no estate at all and by reason of that fact became a charge.

"An act was passed in Massachusetts Feb. 24, 1818, wherein it was provided 'that the inhabitants of any town or district within this commonwealth, who have incurred expenses for the support of any pauper, whether he was legally chargeable to them by means of his settlement or not, may recover the same against such person, his executors or administrators in an action of assumpsit, for money paid, laid out and expended for his use.' Under this law the pauper was liable, and it does not appear that any exception was made in his behalf if he happened to be without estate at the time the relief was furnished: Groveland v. Medford, 1 Allen, 23; Medford v. Learned, 16 Mass. 215. Our act is as broad as the law just cited. It is true, under our law the directors of the poor can only sue for the property which belongs to the person chargeable, but the power to sue where there is no property is of little value.

"Under the law the poor district has a direct recourse to the relatives bound to maintain the pauper: Wertz v. Blair County, 66 Pa. 18. And where, in such case, suit is brought for past maintenance, the present ability of the relative to pay seems to be the limit of the inquiry. We know of no case where the ability to pay at the time the relief was furnished was made the test of liability. It would certainly be a hardship to relieve the person under such circumstances who received the aid, and compel the relative to pay who may be less able at the time than the pauper himself.

"The act of 1836, so far as it provides for the reimbursement of the poor directors, is a remedial statute and should therefore receive a liberal construction. We are satisfied that under it the plaintiffs are entitled to recover from the committee for the support furnished at the almshouse.

"The act of April 8, 1861, P. L. 249, gives the directors of the poor right to recover the moneys expended at the insane asylum. The estate of the pauper is liable to the extent of its liability under the poor law: Lower Augusta Township v. Northumberland Co., 37 Pa. 143; Wertz v. Blair Co., supra."

Judgment for plaintiff for amount claimed for six years. No assignment of error appeared in the paper-books.

*Henry Freedley*, for appellant, cited: Act of March 10, 1806, P. L. 430 ; Overseers v. Stevens Committee, 7 Pa. C. C. R. 144.

*Edward F. Kane, James B. Holland* with him, for appellee, cited : Guardians of the Poor v. Overseers of Phila., 6 S. & R. 561 ; Jester v. Overseers, 11 Pa. 540 ; White Deer Township Overseers' Ap., 95 Pa. 191 ; Mumma's Ap., 127 Pa. 474 ; Wertz v. Blair Co., 66 Pa. 18 ; Lathrop Township Overseers v. Stevens' Committee, 7 Pa. C. C. R. 143 ; Directors v. Hartman, 9 Pa. C. C. R. 177.

OPINION BY MR. JUSTICE FELL, April 9, 1894 :

Edward Malone was an inmate of the almshouse of Montgomery county, from May, 1877, until June, 1888, when he became insane and was removed to the hospital for the insane at Norristown, where he is still confined. In June, 1891, he became entitled under the will of a relative to a legacy of $3,100. This action is by the directors of the poor of the county against the committee of his estate, to recover the amount expended for his board and maintenance while in the almshouse and subsequently while an inmate of the asylum up to June, 1891, since which time he has been maintained out of his estate.

Judgment was entered in the common pleas, on a case stated, for the plaintiff.

It may be conceded for the purposes of this inquiry that supplies furnished a pauper are gratuities, and that an action for the price could not be maintained on an implied promise, or unless an obligation is created by statute. The right to recover in this case was based upon the 33d section of the Act of June 13, 1836, P. L. 548, which reads as follows : " It shall be lawful for the directors of the poor of any county, or for the overseers of any district, as the case may be, in which any person shall have become chargeable, to sue for and recover any real and personal estate belonging to such person, and to sell or otherwise dispose of the personal property, and to collect and receive the rents and profits of the real estate, and to apply the proceeds, or so much thereof as may be necessary, to pay the expenses incurred in the support and funeral of such person."

The evident purpose of this act was to give a right which did not before exist, and a fair construction of it in view of the old law and the remedy would seem to sustain the judgment. It works a change in the relation of the pauper to the community, and imposes an obligation to pay for the maintenance received. The case has been so thoroughly considered in the clear and able opinion of the learned judge of the common pleas that further discussion is unnecessary.

The judgment is affirmed.