The judgment must be affirmed, with costs.

HARDIN, P. J., and MERWIN, J., concurred.

Judgment affirmed, with costs.

---

In the Matter of the Claim of the COUNTY OF ONEIDA, Respondent, *v.* MYRON N. BARTHOLOMEW, a Lunatic; ABEL C. BREWER, as Committee, Appellant.

*Pauper — liability to repay money expended in his behalf — chapter 446 of 1874 — insane person — recovery of the amount expended for his support at the Utica State Hospital.*

The provisions of sections 12, 13 and 17 of article 1 of title 1 of chapter 446 of the Laws of 1874, do not give to a county any right of action against the estate of a lunatic, for past expenses as for a debt. A special remedy is given by section 17 of such act, and in other respects the same remedy is given in the case of a lunatic as in the case of the ordinary poor. The remedy against relatives is statutory, and must be enforced in the manner provided by the statute.

Where an insane person was, on February 11, 1893, transferred by order of the county superintendent to the Utica State Hospital, pursuant to the provisions of chapter 126 of the Laws of 1890, and was there supported at the expense of such county until October 1, 1893, the amount expended for that purpose by the county can be recovered by it from the committee of such lunatic subsequently appointed.

*Semble* that a person receiving aid as a poor person from the officers of the poor in a city or county, in the absence of any representations on his part as to his responsibility or physical condition, incurs no liability to repay the amount expended in his behalf.

*Quære,* as to the effect, after October 1, 1893, of section 7 of chapter 126 of the Laws of 1890.

APPEAL by Abel C. Brower, as committee of Myron N. Bartholomew, a lunatic, from an order of the Supreme Court, made at the Onondaga Special Term and entered in the office of the clerk of the county of Oneida on the 27th day of June, 1894, as amended by an order made at the Madison Special Term and entered in said clerk's office on the 2d day of July, 1894, directing the payment of a specified sum by the appellant, as committee of Myron N. Bartholomew, to the superintendent of the poor of the county of Oneida.

*Burke & Brewer,* for the appellant.

*Howard C. Wiggins,* for the respondent.

MERWIN, J.:

In November, 1883, Myron N. Bartholomew, being then insane and having no property, was duly committed to and received at the Oneida County Asylum for the insane. From that time to February 11, 1893, he was there supported by the county, being all the time insane. On February 11, 1893, he was transferred, presumptively by order of the county superintendent, to the Utica State Hospital, and there supported at the expense of the county of Oneida until October 1, 1893, and for this the county paid the State hospital the sum of eighty-two dollars and fifty cents. The record at the county asylum states that Bartholomew was received as a pay patient. No contract with his relatives is shown. It appears that a brother, Arthur P. Bartholomew, paid for his support up to

November 1, 1886, the last payment being made in November, 1887. Nothing further has been paid the county. On October 25, 1892, Arthur P. died intestate, leaving some property. Myron, as one of the heirs and next of kin of Arthur, is entitled to one-fourth part of his estate. On November 2, 1892, a sister of Myron died intestate, and he, as one of her heirs and next of kin, is entitled to one-third of her estate. On October 10, 1893, by an order of the Supreme Court, in proceedings duly taken, Myron was declared a lunatic and Abel C. Brewer was appointed committee of his estate. The lunatic has no property except what may be derived from his interest in the estates above referred to. The committee has received therefrom about $900.

The present proceeding was commenced on April 1, 1894, and by it the county, by its superintendent of the poor, sought an order requiring the committee to pay for the expense of support of the lunatic from November 1, 1886, to November 11, 1893, and also pay the amount paid by the county to the State hospital. A reference was ordered to a referee to take the evidence concerning the claim and report the same with his opinion thereon. Upon the coming in of the referee's report the order appealed from was made. It allowed as a valid claim against the estate of the lunatic the value of his support from April 1, 1888, to February 11, 1893, being the sum of $663.20, and also the amount paid by the county to the State hospital, making altogether $745.70.

There are two questions to be considered, *first*, whether the county can recover for the support of the lunatic at the county asylum; and, *second*, whether it can recover what it paid to the State hospital.

When the lunatic was taken to the county asylum in 1883 there was no contract between him and the county by which he was bound to pay for his support. The evidence shows he was taken there by two brothers, and one of them for a time paid for his support. He was, in fact, a pauper, and there was apparently no relative who, under the statute (2 R. S. [6th ed.] 808; Code Crim. Proc. § 914), was liable for his support. It is very clear that after November 1, 1886, he was kept and maintained by the county as a poor person under its general obligation to provide for the support of the poor. Under such circumstances it is claimed by the appellant that

there is no liability on the part of the person receiving the support or on his estate to repay to the county the expense. The case of *The City of Albany* v. *McNamara* (117 N. Y. 168) is cited as sustaining this proposition. In that case the doctrine was laid down that a person receiving aid as a poor person from the officers of the poor in a city or county, in the absence of any representations on his part as to his responsibility or physical condition, incurs no liability to repay the amount expended on his behalf.

On the other hand, the respondent claims the recovery can be sustained on the theory that there was an implied promise on the part of the lunatic to pay for necessaries furnished to him by the county. To support this view the case of *Goodale* v. *Lawrence* (88 N. Y. 513) is cited. In that case it was held that a husband, who has voluntarily permitted his insane wife to absent herself from his house and to become a public charge, is liable to an action at the suit of the proper town or county officers for her support. It was said that the action rested upon the common-law obligation of the husband to support the wife. A promise on the part of the husband to pay for necessaries furnished to the wife would be implied. The *Goodale* case is not necessarily inconsistent with the case in 117 New York, but if it were the latter must control. The question then is whether the doctrine of the latter case applies to the case in hand. It would seem to do so, unless the fact that the poor person is insane changes the rule. We are referred to no statute that imposes a personal liability upon the insane person for support furnished by the county at the county asylum. The commitment here was under the provisions of chapter 446 of the Laws of 1874, title 1, article 1. By section 12 of article 1, the duty of supporting an indigent lunatic was imposed upon certain relatives, and by section 13 it was provided that "the overseers and superintendents of the poor shall have the same remedies to compel such relatives to confine and maintain such lunatic, and to collect the costs and charges of his confinement, as are given by law in the case of poor and impotent persons becoming chargeable to any town." Section 17 of the same article is as follows: "The overseers of the poor of any city or town shall have the same remedies to compel the committee or guardian of the estate of any lunatic to confine and maintain such lunatic, and to collect of such committee the costs

and charges of his confinement and support, as are given in the preceding sections against the relatives of such lunatic. And the Court of General Sessions of the Peace of the city or county shall make orders against such committee personally, and enforce them in the same manner as against the relatives of any poor person, so long as such committee has any property in his hands for the support of such lunatic."

These provisions do not give to the county any right of action against the estate of a lunatic for past expenses as for a debt. A special remedy is given in section 17, and in other respects the same remedy is given as in case of the ordinary poor. The remedy against relatives is statutory and must be enforced in the manner provided by statute. (*Herendeen* v. *De Witt*, 49 Hun, 53.)

The respondent insists that necessaries were furnished to the lunatic, and that a promise to pay therefor should be implied. So the relief furnished to the ordinary poor consists of necessaries, and in such a case a promise to pay therefor will not be implied, according to the rule laid down in *The City of Albany* v. *McNamara*. The rule laid down in that case is, we think, applicable here, and prevents a recovery by the respondent of the item for support at the county asylum.

The claim for money paid to the Utica State Hospital stands on a different basis. It is by law provided (Chap. 446, Laws of 1874, tit. 3, § 30) that every insane person supported in that hospital " shall be personally liable for his maintenance therein, and for all necessary expenses incurred by the institution in his behalf. And the committee, relative, town, city or county, that would have been bound by law to provide for and support him if he had not been sent to the asylum, shall be liable to pay the expenses of his clothing and maintenance in the asylum, and actual and necessary expenses to and from the same." By section 31 of the same title it is provided that " the expenses of clothing and maintaining in the asylum a patient who has been received upon the order of any court or officer, shall be paid by the county from which he was sent to the asylum. * * * Said county, however, shall have the right to require any individual, town, city or county, that is legally liable for the support of such patient, to reimburse the amount of said bills, with interest, from the day of paying the same." The coun-

sel for the appellant admits that the estate of the lunatic is liable (*Supervisors* v. *Morgan*, 2 Keyes, 277) if sections 30 and 31, above referred to, are to be literally construed and were in force when the payment was made. Those sections have not been repealed, but the claim is made that they were, in effect, superseded by the provisions of the "State Care Act," so called, being chapter 126 of the Laws of 1890. It is not, however, claimed that under that act the indigent insane ceased to be a charge upon the county prior to October 1, 1893. (See § 7 of the act.) The claim in question is only for expense to that date. The fact that the transfer to the Utica State Hospital may have been under the provisions of that act does not prevent the county from enforcing the personal liability of the lunatic. We think, therefore, that this claim was properly allowed.

It follows that the order appealed from should be modified by reducing the recovery or allowance to the sum of eighty-two dollars and fifty cents, with interest from April 1, 1894. The allowance of costs should also be stricken out as the main item claimed is disallowed.

HARDIN, P. J., and MARTIN, J., concurred.

Order modified by reducing the amount allowed to the sum of eighty-two dollars and fifty cents, with interest from April 1, 1894, and by striking therefrom the allowance of costs, and, as so modified, affirmed, without costs of this appeal to either party.