LUC DANDURAND

*v.*

THE COUNTY OF KANKAKEE.

*Opinion filed April 16, 1902—Rehearing denied June 5, 1902.*

1. COUNTIES—*county court has jurisdiction of suit in assumpsit by the county.* The county court has jurisdiction of an action of assumpsit brought by the county to recover for the support of an insane person, where the damages are laid at $1000. ·

2. SAME—*insane person of means is liable to the county for support at the county asylum.* An insane person of means and having no one dependent upon him for support, who is returned by the State authorities to the county and is kept by it in the county insane asylum for a period of years with the knowledge of his conservator, is impliedly liable to the county for his support, care and medical attention furnished to him by the county during such period.

3. SAME—*intention to charge does not enter into case where support is furnished by county.* If an insane person is liable, under the law, for his support and necessaries furnished by the county, the fact that the county officers had not made a special charge against him, and had taken no steps to compel him to pay until a year or two before bringing suit, does not release the insane person from liability, upon the ground that the county did not intend to charge for such support prior to the demand, since no officer of the county could form such an intention so as to bind the county.

*Dandurand* v. *County of Kankakee*, 96 Ill. App. 464, affirmed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the County Court of Kankakee county; the Hon. EBEN B. GOWER, Judge, presiding.

The Appellate Court makes the following statement:
"This was a suit brought by the county of Kankakee against Luc Dandurand for his board, lodging, support, care and medical treatment in the Kankakee county insane asylum, a department of its poor house. The declaration contained five counts. Defendant filed a plea to the jurisdiction of the court. A demurrer to this plea was sustained. The plea was amended, and demurrer

again sustained to it. Defendant then demurred to the first four counts of the declaration. This demurrer was sustained as to the first and second counts and overruled as to the third and fourth. Defendant pleaded the general issue and the five years' Statute of Limitations to the third, fourth and fifth counts. A trial was had without a jury. Defendant presented eight propositions of law. The court held the seventh and refused the others. The court found for plaintiff in the sum of $520 and rendered judgment therefor."

Defendant prosecuted his appeal, his conservator executing the appeal bond in his name, to the Appellate Court, where the judgment was affirmed, and this appeal is prosecuted from such judgment of affirmance, a certificate of importance having been granted.

GRANGER & GRANGER, for appellant.

W. J. BROCK, and B. L. COOPER, State's Attorney, for appellee.

Per CURIAM: In deciding the case, the Appellate Court, in its opinion, expresses the following views:

"*First*—It is argued the court erred in sustaining the demurrer to the amended plea to the jurisdiction. The position taken is, that the county court does not have jurisdiction of a suit brought by the county. Reliance is had upon section 31 of chapter 34 of the Revised Statutes. That section restricts the courts in which suit against a county may be brought, but contains no such restriction in cases of suits brought by a county. The county bringing a suit may resort to any court having jurisdiction of the subject matter in the county where the defendant resides. The action was assumpsit and the damages were laid at $1000. The county court had jurisdiction of such a case. We find no error in sustaining the demurrer to said plea. Defendant also argues the court erred in over-

ruling his demurrer to the third and fourth counts of the declaration, but by thereafter pleading to said counts upon the merits demurrer was waived.

"*Second*—On February 6, 1888, Dandurand, in proper proceedings in the county court, was adjudged insane and ordered committed to a State hospital for the insane, and he was then placed in the State insane hospital at Kankakee. On August 19, 1893, the superintendent of the Kankakee county poor farm and insane asylum, acting, as he testified, under orders either from the State asylum or the county clerk, but which he did not remember, went to the State asylum and took Dandurand therefrom and brought him to the county insane asylum, where he has ever since remained and been cared for by the county at public expense, except that his conservator paid for his clothing. The discharge book of the State asylum states his condition when he left as 'stationary.' While his then conservator did not know of the removal at once, both he and the present conservator did learn of it soon after it occurred, and more than five years before this suit was begun. Neither side proved the special circumstances under which the State authorities returned Dandurand to the county authorities. Section 17 of chapter 85 of the Revised Statutes authorized the superintendent of the State hospital to return quiet, harmless, chronic patients to the counties from which they were sent, under certain circumstances, and we must presume this officer discharged his duty, till the contrary appears. But, irrespective of that, this patient was returned to the county authorities. He was in need of board, care and medical attention, and was obviously unfit to be at large, and the county furnished him that care. His conservator knew the facts and did not offer to provide for him elsewhere or take any steps to have any change made. We are of opinion defendant was impliedly liable for these necessaries so furnished him. Dandurand had an estate amounting, at the time of the trial, to about $2500. It

appears from the proofs that no one was dependent upon him for support, and that no one is entitled to anything from said fund but Dandurand himself. Section 17 of chapter 86 of the Revised Statutes requires the conservator to apply the income and profit of his ward's estate, so far as may be necessary, to the comfort and suitable support of his ward. Speaking of statutes then in force similar to our present statute relative to paupers, the court, in *City of Alton* v. *County of Madison,* 21 Ill. 114, said that to become a public charge a person must be poor and unable to earn a livelihood, and be without any of the enumerated relatives of sufficient ability for his support; that a person having sufficient means for his own support was not within the provisions of the law making his support a public charge; that there can be no reason why the public should be charged with the support of a person having ample means for that purpose, and that to support him as a public charge, where he has ample means, would not be just; that an insane person having property adequate to his support is not a pauper, and consequently the county is not liable for his support. It is true, the questions discussed there arose in a different way from what they do here. There the city of Alton had supported an insane person possessed of property and sued the county to recover therefor. But the principles there laid down are of a general character. If Dandurand had been a pauper his relatives would have been liable to the county for his support, under the provisions of chapter 107 of the Revised Statutes, entitled 'Paupers.' How can it be said that because he has means both he and his relatives are exonerated and the county must bear the charge? We are satisfied the court below correctly held him liable.

"*Third*—It is urged that as the county officers had not made a special charge against him, and had taken no action to compel him to pay till a year or two before this suit was brought, the county is not entitled to recover

for support prior to that time, as it is presumed the county intended not to charge for said support prior to that time.  We think the intention does not enter into the case where the support is by a public body.  If he was liable for his own support under the law, there was no officer who could form an intention that gratuitous service should be rendered, which would bind the county and release defendant from liability.  Nor can such intention be manifested by a failure to inaugurate some system of book-keeping and of making charges against the insane patient, nor by a failure of the county officers to promptly ascertain and enforce the legal rights of the county.

"*Fourth*—The proof was that the services rendered were reasonably worth two dollars per week, and this was not controverted, and the court allowed two dollars per week for the five years preceding the commencement of the suit.  The proof showed the mere dieting of the inmates of the county insane asylum cost the county less on the average than that sum.  This is immaterial, for that is not all defendant received.  He had his lodging, medical attention and nursing, and such supervision and control as he might require by reason of his insanity, and upon this record we think he has no cause to complain of the moderate sum allowed.

"The action of the court upon the propositions of law was in harmony with the views herein expressed.  The judgment is affirmed."

We concur in the foregoing views, and in the conclusion reached by the Appellate Court.  The judgment of the Appellate Court is, accordingly, affirmed.

*Judgment affirmed.*