# BAKER *v.* DISTRICT OF COLUMBIA.*

---

INSANE PERSONS; STATUTES; STATUTE OF LIMITATIONS.

1. The provision of the act of February 23, 1905 (33 Stat. at L. 740, chap.

---

*Use of Property of Lunatic.*—On using lunatic's property to carry out his presumed wishes or to fulfil his equitable obligations, in the absence of a legal liability, see note in 34 L.R.A. 297.

As to power to make estate of person committed to insane asylum, or his relatives, liable for cost of his maintenance therein, see note in 24 L.R.A. (N.S.) 295.

738, U. S. Comp. Stat. Supp. 1911, p. 1433), that if an insane person confined in the Government Hospital for the Insane has property, his committee shall reimburse the District of Columbia for moneys expended in caring for such insane person "up to the time of their appointment," will not be given a retroactive effect, so as to entitle the District to recover sums expended prior to the date of such act in caring for an indigent lunatic who subsequently becomes entitled to the possession of an estate. (Mr. Chief Justice SHEPARD dissenting.)

2. An act providing for the reimbursement of the District of Columbia, from the estates of lunatics confined in the Government Hospital for the Insane, of sums expended in their care and treatment, is inconsistent with, and prevents the bar of, the general statute of limitations, as against such a claim.

No. 2360.    Submitted February 17, 1912.    Decided May 14, 1912.

HEARING on an appeal from a decree of the Supreme Court of the District of Columbia directing the appellants, as committee of a lunatic, to reimburse the appellee, the District of Columbia, for sums paid for his board and medical treatment.

*Reversed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from a decree in the supreme court of the District directing appellants, as committee of Frank Healy, a lunatic confined in the Government Hospital for the Insane, to reimburse the District of Columbia, the appellee, in the sum of $3,941.15, paid to the hospital for board and treatment of said lunatic from February 16, 1893, to December 25, 1910.

There is no dispute as to the facts, which are as follows: Healy was regularly committed to the hospital upon the date first above named, as an indigent insane person of homicidal and otherwise dangerous tendencies. On December 25, 1910, James A. Healy, brother of Frank, died intestate, whereupon Frank became entitled to possession of an estate aggregating something over $200,000. The appellants, after their appointment and qualification as committee of said lunatic, offered to pay for his board and care from said December 25, 1910. The

District demanded that it be· reimbursed for the whole period of his incarceration in the hospital; hence this suit.

Mr. *Frank J. Hogan* and Mr. *Julius I. Peyser,* for the appellants:

1. Apart from statute, there is no liability or right to reimbursement. *State* v. *Colligan,* 128 Iowa, 536; *Oneida County* v. *Bartholomew,* 31 N. Y. Supp. 106, affirmed by the court of appeals in 151 N. Y. 655; *Brown* v. *Hospital,* 110 Va. 321.

2. There is no different rule applicable to the pauper sane and the pauper insane. *Deer-Isle* v. *Eaton,* 12 Mass. 328; *Montgomery County* v. *Gupton,* 139 Mo. 303; *Directors* v. *Nyce,* 161 Pa. 82; *Rhodes* v. *Rhodes,* L. R. 44 Ch. Div. 94; *Montgomery County* v. *Ristine,* 124 Ind. 242; *Albany* v. *Mc-Namara,* 117 N. Y. 168, 6 L.R.A. 212; *Baldwin* v. *Douglas County,* 37 Neb. 283; *Delaware County* v. *McDonald,* 46 Iowa, 171; *Central Kentucky Asylum* v. *Penick,* 102 Ky. 533.

And under this statute, the statute of limitations was applied to a claim against a lunatic for his support as to that portion of time which accrued beyond the statutory period. *Humber* v. *Central Kentucky Asylum,* 100 Ky. 112; *Ga Nun* v. *Palmer,* decided October 3, 1911, by the court of appeals of New York, and reported in the New York Law Journal, and also in part in 39 Wash. L. Rep. 681.

3. Even where there is a statute the liability cannot extend to support covering a period preceding the date the statute went into effect. *Medford* v. *Learned,* 16 Mass. 215.

4. Even where there is a statute the liability does not extend to support covering any time when the insane person was not actually possessed of means. *Kaiser* v. *State,* 80 Kan. 364; *Montgomery County* v. *Ristine,* 124 Ind. 242; *Rhodes* v. *Rhode,* L. R. 34 Ch. Div. 94.

5. The act of February 23, 1905, is not applicable. *Thompson* v. *Thompson,* 218 U. S. 611; *United States* v. *Frizzell,* 19 App. D. C. 48; *Cape Elizabeth* v. *Lombard,* 72 Me. 492.

6. It is elementary in the law of contracts that a promise of

a person competent, made under a sense of moral obligation, is not based upon a sufficient consideration, and is not legally binding.

A past consideration, if it imposed no legal obligation when rendered, will support no promise whatever.

7. If we shall but enforce the simple rule that no statute is to be construed retrospectively, unless its words compel the court so to construe it, the act of February 23, 1905, immediately passes out of this case; for no one will contend that its language is such that the court must read it retrospectively. *United States* v. *American Sugar Co.* 202 U. S. 563; *United States* v. *Heth,* 3 Cranch, 398.

In addition, the statute, as read by the District, is violently in derogation of the common law, and must therefore be strictly construed. *Northern P. R. Co.* v. *Whalen,* 149 U. S. 157; *Shaw* v. *Merchants Nat. Bank,* 101 U. S. 557; *Bell* v. *Morrison,* 1 Pet. 351.

The language of the statute is to be read in the ordinary sense of the words used, according to their grammatical arrangement; the Congress is to be credited with a knowledge of the meaning of the words and the rules of grammar; the law is to be read prospectively, unless it compels the court to read it retrospectively; the court is to add nothing to its scope as plainly worded; and these are elementary rules of statutory construction, where there is any necessity or room for construction. *United States* v. *Goldenberg,* 168 U. S. 95; *Lake County* v. *Rollins,* 130 U. S. 662; *Market Co.* v. *Hoffman,* 101 U. S. 112; *Denn* v. *Reid,* 10 Pet. 524; *St. Paul R. Co.* v. *Phelps,* 137 U. S. 528; *United States* v. *Thornley,* 113 U. S. 310; *Hamilton* v. *Rathbone,* 175 U. S. 414.

*Mr. Edward H. Thomas,* Corporation Counsel, for the appellee:

1. Congress can by statute extend liability for support of a lunatic to cover a period preceding the enactment of the statute.

This proposition is controverted by appellants' counsel, though no claim is made that the statute is unconstitutional. The case of *Medford* v. *Learned,* 16 Mass. 215, is cited as authority. This is regarded as an exceptional case.

The ground of the opinion in the Massachusetts case is thus stated: "For no legislator could have entertained the opinion that a citizen free of debt by the laws of the land could be made a debtor merely by legislative act declaring him one."

This language does not apply to the insane, and if it does, it is not the law. *Camden County* v. *Ritson,* 68 N. J. L. 666; *Greesly* v. *Hamilton County,* 136 Iowa, 722.

A statute providing that the estates of insane persons who have no heirs within the United States dependent upon their estates for support shall be chargeable with the expense incurred by any county for the treatment and maintenance of such insane person in a hospital for the insane is valid and constitutional. *Bon Homme Co.* v. *Berndt,* — S. D. —, 50 L.R.A. 351; *Napa State Hospital* v. *Dasso,* 153 Cal. 698, 18 L.R.A. (N.S.) 643; *Kaiser* v. *State,* 80 Kan. 364, 24 L.R.A. (N.S.) 295.

2. The liability to support the insane may be fixed by statute to cover the time when the insane person was not actually possessed of means. *Montgomery County* v. *Ristine,* 124 Ind. 242, 8 L.R.A. 561; *Directors* v. *Nyce,* 161 Pa. 82; *McCook County* v. *Karmoss,* — S. D. —, 31 L.R.A. 461; *McNairy County* v. *McCoin,* — Tenn. —, 41 L.R.A. 862.

3. The liability where there is no statutory right to reimbursement.

The cases cited by appellants' counsel seem in the main to turn upon the alleged doctrine that no common-law right exists to recover for necessaries furnished a lunatic. No question of common-law right or of action at law arises in this case. The doctrines of the cases cited by appellants' counsel are not, however, conceded. Without extensive examination, the belief is expressed that the doctrine of those cases is against the weight of authority.

4. The statute of limitations does not run where a govern-

mental agency has supported an insane person. The act of 1905 is imperative in requiring all costs and all expenditures to be reimbursed for however long a time. It was within the power of Congress to make this requirement. The District of Columbia, having been by Congress required to support the insane person, was, in so doing, exercising a governmental agency, and therefore the statute of limitations, both from the language of the act and the character of the agency employed, cannot be successfully pleaded.

The rule that the statute of limitations does not run against a State applies in favor of a·claim for care and treatment by a hospital which is a mere agent of the state, owned and controlled by it. *Eastern Hospital* v. *Winston,* — Va. —, 3 L.R.A. (N.S.) 746, and elaborate note; *United States* v. *American Bell Teleph. Co.* 159 U. S. 548; *Stedman* v. *Hart,* Kay, 607.

5. Under sec. 115 of the Code, the equity court is given the broadest power in reference to the affairs, the care, and the management and preservation of the estates of persons *non compos mentis.*

The statute giving this jurisdiction must be most broadly construed. *Bechtel* v. *United States,* 101 U. S. 597.

Concerning the jurisdiction of courts of chancery over the person and estates of lunatics, see *Hamilton* v. *Traber,* 78 Md. 26; *Carrie's Case,* 2 Bland. 488; *Re Colvin,* 3 Md. Ch. 278; *Hackey* v. *Peters,* 22 App. D. C. 346; *United States* v. *Morse,* 218 U. S. 493; *Colman* v. *Lunatic Asylum,* 6 B. Mon. 239.

The legislature is the successor of the Crown of England, as *parens patriæ* in the case of idiots and lunatics. *Mormon Church* v. *United States,* 136 U. S. 156.

Mr. Justice ROBB delivered the opinion of the Court:

The Government Hospital for the Insane was established for "the most humane care and enlightened curative treatment of the insane of the Army and Navy of the United States and of the District of Columbia." (Rev. Stat. § 4838, U. S. Comp. Stat. 1901, p. 3354). Sec. 4844, Rev. Stat., ordains that "all

indigent insane persons residing in the District of Columbia at the time they became insane shall be entitled to the benefits of the Hospital for the Insane, and shall be admitted * * * after due process of law showing the person to be insane and unable to support himself and family, or himself, if he has no family, under the visitation of insanity." Under sec. 4849, Rev. Stat., it was provided that when it appeared, in the case of any person whose insanity commenced while a resident of the District of Columbia, that he was able to defray a portion, but not the whole, of the expenses of his support and treatment in the hospital, due inquiry into the facts might be had, and if, upon such inquiry, it appeared that such insane person had property and no family, then, as a condition upon which such insane person, admitted or to be admitted to the hospital, should "receive or continue to receive the benefits of the hospital," there should be paid to the superintendent from the income of the property or state of such insane person, such portion of his expenses as should be determined to be just and reasonable, under all the circumstances.

Sec. 1 of the act of February 23, 1905 (33 Stat. at L. 740, chap. 738, U. S. Comp. Stat. Supp. 1911, p. 1433), upon which the District relies, reads as follows:

"That hereafter the proceedings instituted upon petition of the Commissioners of the District of Columbia, to determine the mental condition of the alleged indigent insane persons and persons alleged to be insane, with homicidal or otherwise dangerous tendencies, shall be according to the provisions of the Code of Law for the District of Columbia relating to lunacy proceedings: Provided, That the jury to be used in case the said Commissioners are the petitioners shall be impaneled by the United States marshal for said District, upon order of the court, from the jurors in attendance upon the criminal courts of said District, who shall perform such services in addition to and as part of their duties in said criminal courts: Provided, further, That during such time as jurors are not in attendance upon said criminal courts, the court may direct the said marshal to impanel the jurors in attendance upon the police court of

the said District, who shall perform such duties in addition to
and as a part of their duties in said police court; or the said
court may direct a special jury to be summoned for such in-
quisitions.   In case any such person adjudged to be of unsound
mind has property, real or personal, the equity court of said
District shall have full power in the same cause to appoint a
committee or trustee of the person and estate of such person,
according to the provisions of said Code, and such committee
or trustee shall reimburse, out of the funds of the lunatic, the
District of Columbia, for all court costs expended or incurred
by it, and for all moneys by it expended or costs incurred in
caring for and treating such insane person up to the time of
such appointment."

   The appellants insist that, prior to the passage of said act of
1905, no recovery was authorized for necessaries furnished an
indigent lunatic, and that, in the absence of a statute authoriz-
ing such a recovery, no implication of a promise to repay arose.
Proceeding from that premise appellants further insist that the
act of 1905 ought not to be given retroactive operation when,
by so doing, a right of action would be created where none be-
fore existed.   Having thus outlined the case, let us turn to the
authorities.

   In the early case of *Deer-Isle* v. *Eaton,* 12 Mass. 328, in
which recovery was sought against one who had been treated
and furnished necessaries while indigent, the court said:   "No
contract, express or implied, existed between the pauper and
the town.   \*   \*   \*   If no debt existed at the time, none could
arise afterwards in consequence of a change of circumstances in
the pauper."   In *Medford* v. *Learned,* 16 Mass. 215, the ques-
tion arose under a statute similar to the one here involved, and
which provided "that the inhabitants of any town or district
within this commonwealth, who may have incurred expenses
for the support of any pauper, etc., may recover the same
against such person, his executors or administrators, in an ac-
tion of assumpsit, for money paid, laid out, and expended for
his use."   This statute was evidently passed in view of the rul-
ing in *Deer-Isle* v. *Eaton, supra.*   The court ruled that there

could be no recovery under the statute for any expenses incurred prior to the date when it went into effect, saying: "It must be presumed to have been known to the legislature, that an action could not be maintained by the inhabitants of a town, for a reimbursement of expenses incurred for the support of one who was actually a pauper when the supplies were furnished; and therefore it is the less probable that it was intended that this statute should have a retroactive effect. For no legislator could have entertained the opinion that a citizen free of debt by the laws of the land, could be made a debtor merely by a legislative act declaring him one." The court further proceeded to point out that it was not necessary to give the statute a retroactive operation.

In *Oneida County* v. *Bartholomew,* 82 Hun, 80, 31 N. Y. Supp. 106, affirmed in 151 N. Y. 655, 46 N. E. 1150, the indigent lunatic, as here, came into the possession of property, and the action was to recover for past support. The court said: "We are referred to no statute that imposes a personal liability upon the insane person for support furnished by the county at the county asylum. * * * The respondent insists that necessaries were furnished to the lunatic, and that a promise to pay therefor should be implied. So the relief furnished to the ordinary poor consists of necessaries, and in such a case a promise to pay therefor will not be implied, according to the rule laid down in *Albany* v. *McNamara,* 117 N. Y. 168, 6 L.R.A. 212, 22 N. E. 931. The rule laid down in that case is, we think, applicable here, and prevents a recovery by the respondent of the item for support at the county asylum."

In *State* v. *Colligan,* 128 Iowa, 536, 104 N. W. 905, the court, after stating the contention on behalf of the State, said: "Conceding this legal proposition, we find no authority for holding that the State, having established hospitals for the insane, which are largely charities, and provided, in the interest of humanity and for the protection of society, that insane persons shall be confined therein, has any common-law right to recover against those who receive the benefits of such public charities. The uniform rule seems to be that there is no liability on the

part of the person who receives such benefit, or on the part of his relatives, to make compensation, save as such compensation may be expressly required and provided for by statute. No such obligation is to be implied."

In *Montgomery County* v. *Gupton,* 139 Mo. 303, 39 S. W. 447, 40 S. W. 1094, the action was for the recovery from the administrator of a deceased insane person, of money expended by the county in supporting such person at a State asylum to which she had been committed as an indigent. It transpired that she was not in fact an indigent at the time, but the court nevertheless ruled that no recovery could be had under a statute authorizing such a recovery by the county "from any person who, by law, is bound to provide for the support and maintenance of such person." The court said: "It is well settled at common law that the provision made by law for the support of the poor is a charitable provision, from which no implication of a promise to repay arises, and moneys so expended cannot be recovered of the pauper, in the absence of fraud, without a special contract for repayment."

In *Montgomery County* v. *Ristine,* 124 Ind. 242, 8 L.R.A. 461, 24 N. E. 990, the court said: "It is a thoroughly settled proposition that where one is received into a charitable institution for support or treatment, the law raises no implied obligation to pay, in the absence of a contract. Where an individual is received into an institution established solely for beneficial purposes, the law refers his reception, and the relief administered to him, to motives of charity.   *   *   *   An institution or society, no more than an individual, can assume to be dispensing charity, and at the same time create a pecuniary obligation against one to whose necessities it ministers."

We will now review briefly the cases relied upon by the appellee. In *Goodale* v. *Lawrence,* 88 N. Y. 513, 42 Am. Rep. 259, recovery was permitted at the suit of a county officer against a husband who had voluntarily permitted his insane wife to absent herself from his house and become a public charge, recovery being rested "upon the common-law obligation of the husband to support his wife."

*Michaels* v. *Central Kentucky Asylum,* 118 Ky. 445, 81 S. W. 247, is not at all in point, the lunatic in that case not being an indigent person when the service was rendered him.

In *McNairy County* v. *McCoin,* 101 Tenn. 74, 41 L.R.A. 862, 45 S. W. 1070, it was held that recovery might be had in an action against the lunatic and her guardian, when, by the latter's neglect, the county had been compelled to provide for her as a pauper. As the insane person in that case was not indigent, the distinction between that case and this is apparent.

In *Dandurand* v. *Kankakee County,* 196 Ill. 537, 63 N. E. 1011, the same question was involved as in the last case cited.

In *Montgomery County* v. *Nyce,* 161 Pa. 82, 28 Atl. 999, the action was to recover, out of after-acquired property, for the maintenance of a lunatic while indigent. At the time of such maintenance, the act of June 13, 1836, had long been in force. That act permitted such a recovery. The trial court, in sustaining the right of recovery, said: "If the pauper receives the maintenance upon the condition that he shall pay when able, it answers his needs just as much as if there was no obligation to pay under any conditions." In sustaining the judgment, the supreme court said: "It may be conceded for the purposes of this inquiry that supplies furnished a pauper are gratuities, and that an action for the price could not be maintained on an implied promise, or unless an obligation is created by statute." After quoting said act of 1836, the court observed: "It [the statute] works a change in the relation of the pauper to the community, and imposes an obligation to pay for the maintenance received."

In *Kaiser* v. *State,* 80 Kan. 364, 24 L.R.A.(N.S.) 295, 102 Pac. 454, the question was whether recovery might be had against the estate of a deceased insane person for the care of such person in the State Hospital for the Insane. The court sustained the right of recovery, saying: "Whether a claim exists against his estate for his care at the hospital at any given time depends upon whether at that time he had sufficient property for the purpose."

From the foregoing review of the authorities it is apparent

that no recovery has heretofore been permitted in a case like the one before us. In the light of those adjudications, what must have been the intent of Congress in the passage of said act of 1905 ? Under the contention of appellee, that act was entirely unnecessary, as the service rendered Healy was rendered not as a public charity, but under an implied promise of reimbursement; in other words, under the contention of the District, this act is merely declaratory of an existing right. We do not so read it. The Government Hospital for the Insane came into being as a public charitable institution. No distinction was originally made between the status of the different classes of persons subject to admission thereto. If an indigent insane person was unable to support himself and family, or himself, if he had no family, he was as a matter of right entitled to the benefits of the hospital; and down to the enactment of the statute of February 28, 1861, which became sec. 4849 of the Revised Statutes, U. S. Comp. Stat. 1901, p. 3358, to which we have previously adverted, there was not a line in the statute indicating any intent on the part of Congress to create any liability on the part of such indigent person on account of his care in such hospital. Under sec. 4849, which was evidently enacted to create a liability where none before existed, an insane person able in part to contribute to his support is made liable therefor to the extent only of his ability to pay. Beyond that ability no obligation is created, and, we are convinced, none existed. Such was the law upon the passage of said act of 1905.

"We are to remember," said the Supreme Court of the United States in *United States* v. *American Sugar Ref. Co.* 202 U. S. 563, 50 L. ed. 1149, 26 Sup. Ct. Rep. 717, "that there is a presumption against retrospective operation, and we have said that words in a statute ought not to have such operation 'unless they are so clear, strong, and imperative that no other meaning can be annexed to them, or unless the intention of the legislature cannot be otherwise satisfied.'" We do not deem it necessary to give the statute in question a retroactive operation. We think Congress thereby intended to declare a change in the relation of the indigent insane, whereby maintenance thereafter received

by them should be received upon the condition that they pay therefor when able; in other words, the passage of that act marked a further change in the policy of the law towards the indigent insane. Maintenance thereafter furnished was to be furnished not as an unconditional charity, but upon the expectation of future reimbursement, if the circumstances of the beneficiary should permit. The provision that the committee or trustee of such insane person shall reimburse the District for care and expenses up to the time of the appointment of such committee or trustee was, we think, intended to relate back to the date of the passage of the act, and no further. Upon that date, as above pointed out, the status of the insane person changed, and, by implication of law, he thereafter became liable for the support furnished him.

The necessary effect of the act of 1905 is to prevent the running of the statute of limitations, as its provisions are inconsistent therewith. *Campbell* v. *Holt,* 115 U. S. 620, 629, 29 L. ed. 483, 487, 6 Sup. Ct. Rep. 209. In that case it was said: "We can see no right which the promisor has in the law which permits him to plead lapse of time instead of payment, which shall prevent the legislature from repealing that law, because its effect is to make him fulfil his honest obligations."

The judgment will be reversed, each party to pay one half the costs, and the cause remanded with directions to enter a decree in accordance with this opinion.                    *Reversed.*

Mr. Chief Justice SHEPARD dissenting:

I believe that the decree should be affirmed for the following reasons:

The care and treatment of the indigent insane of the District of Columbia are paid for by the Commissioners from appropriations of public money regularly made for the purpose. Prior to the act of February 23, 1905, no provision had been made for actions to recover the expenditures from the individuals cared for. The object of the original bill which resulted in said act was to amend the procedure relating to proceedings for the de-

termination of lunacy. The title of the act as passed and published is: "An Act to Change the Lunacy Proceedings in the District of Columbia, where the Commissioners of Said District Are the Petitioners, and for Other Purposes." 33 Stat. at L. 740, chap. 738, U. S. Comp. Stat. Supp. 1911, p. 1433.

Undoubtedly, there is a presumption against the retrospective operation of a statute, and it is not to be given unless plainly shown that such was the intention of the legislature. *United States* v. *American Sugar Ref. Co.* 202 U. S. 563–567, 50 L. ed. 1149–1151, 26 Sup. Ct. Rep. 717.

It was contended on the argument that the object of the statute was to amend the proceedings in lunacy, and that it begins with the appropriate word "hereafter," clearly indicating the purpose to make it operate prospectively. This is true, and such is its effect as applied to the procedure which it was originally intended to change. Before the bill for that purpose became a law, the proviso with the clause involved was attached to and became a part of it. It was apparent that it was not added to perform the ordinary function of a proviso, namely, to make an exception from the enacting clause, to restrain generality, and prevent misinterpretation, by making clear that which might be doubtful from the general language used. On the other hand, it is clear that it was inserted, as is now so frequently the practice, to include something not otherwise within the operation of the section in which it is included; to introduce new matter extending rather than limiting or explaining that which has gone before. *Interstate Commerce Commission* v. *Baird,* 194 U. S. 25–37, 48 L. ed. 860–866, 24 Sup. Ct. Rep. 563. The proviso expresses one of the "other purposes" of the caption. As indicated in the statutes establishing the hospital for the insane, and providing for its management, it was not the purpose to extend its benefits without charge to those able to pay therefor. If one who has received free care and treatment while indigent shall come into the possession of an ample estate, there is certainly nothing unjust or inequitable in subjecting that estate to liability for the past treatment. Such I think was the plain intent of Congress expressed in the words, "such com-

mittee or trustee shall reimburse, out of the funds of the luna-
tic, the District of Columbia, for all court costs expended or in-
curred by it, and for all moneys by it expended or costs in-
curred in caring for and treating such insane person up to the
time of such appointment." The moment the committee were
appointed, it became their duty to provide for the maintenance
and treatment of the lunatic, and it appears that they have pre-
ferred to let him remain in the hospital as a paying or contract
patient. The proviso requiring the reimbursement of the Dis-
trict of Columbia necessarily had no other than a retrospective
operation, and there is no limitation of the period which the re-
imbursement shall cover. It applies to all, and not to a part
only, of the moneys expended in caring for and treating the in-
sane person up to the time of the appointment of the committee,
at which time the liability of the District of Columbia closed.

2. It is true that many American decisions, resting upon the
early case of *Deer-Isle* v. *Eaton,* 12 Mass. 328, support the prop-
osition that where the public authorities extend relief to the in-
digent, there is no implied promise whereon to base an action
to recover the same. In other words, the extension of such
charity is in the nature of an executed gift. In likening the
extension of public charity under the compulsion of law, to the
voluntary charity of an individual, therefore, regarding the for-
mer as an executed gift also, we think there is a mistaken an-
alogy. Unquestionably, where a private individual acting un-
der no deception makes a voluntary gift to another, whether ac-
tuated by charity or any other motive, he cannot afterwards
maintain an action upon an implied promise to return or re-
pay, nor could a subsequent statute relate back and confer the
right.

But the mere furnishing of supplies to an infant or a lunatic
does not necessarily imply a gift; and unless it appears that a
gift was really intended, there is an implied promise to pay
for the same, on which an action will lie.

While later decisions did not turn upon the point, expressions
in the opinion indicate a tendency to mark a distinction between
private, voluntary gifts and the charity of the State under com-

pulsion of law. *Goodale* v. *Lawrence,* 88 N. Y. 513, 42 Am. Rep. 259; *McNairy County* v. *McCoin,* 101 Tenn. 74, 41 L.R.A. 862, 45 S. W. 1070; *Michaels* v. *Central Kentucky Asylum,* 118 Ky. 447, 448, 81 S. W. 247; *Dandurand* v. *Kankakee County,* 96 Ill. App. 464–467, s. c. 196 Ill. 537, 63 N. E. 1011; *Montgomery County* v. *Nyce,* 161 Pa. 82, 83, 28 Atl. 999.

In the execution of the police powers of government, it is made the duty of certain officers to see to it, to the extent of money appropriated for the purpose, that paupers and lunatics are furnished with the necessaries of life, and as regards lunatics, that no harm shall come to the community from their going at large. For these purposes the State compels the levy of taxes upon all citizens. The duty of caring for the unfortunates mentioned is an obligation of law, and not a mere gift or charity. If one of these objects of enforced charity come into the possession of property, it is equitable and just that he be compelled to repay the benefits received. In the language of Swartz, P. J., in *Montgomery County* v. *Nyce,* supra: "Why should the recipient of the supplies under such circumstances escape payment when in funds? If he is compelled to pay, he simply does that which in good morals he ought to do voluntarily. His payment enables the county to enlarge its liberality in other needy cases. It is said that such repayment is in conflict with the policy of our poor laws and our idea of charity. But it seems to us there is something radically wrong with the theory that a patient may leave an institution with a large estate of his own in his pocket, without any legal obligation resting upon him to pay for the food he consumed. * * * Nor does the demand for reimbursement under such circumstances detract from the charity. If the pauper receives the maintenance upon the condition that he shall pay when able, it answers his needs just as much as if there were no obligation to pay under any conditions."

I repeat that the maintenance of institutions for the care of the poor and the insane is not a mere charity, but the performance of an obligation to society, commanded by law for public purposes. It is not voluntary, but compulsory. It is not the

State that supplies the means, but the citizen who is taxed to supply them. Hence, there appears to be no sound reason why, for the furnishing of such supplies, there should not arise the same obligation as in the case of others supplying such necessaries, but not by way of voluntary gift. If the recipients of such necessaries of life have no means, it would be of no avail to attempt to hold them liable at the time; but the right to do so nevertheless exists. Nor should the right of action be affected by the absence of statutory authority at the time, though possibly the capacity of the authorities of the State to bring such an action might depend on a statute. The present statute relates back, and may be said to be curative of such incapacity. However that may be, it authorizes the bringing of the action now for all necessaries furnished from the beginning, no matter what time has elapsed, and thus prevents the bar of the general statute of limitations. Without, in terms, repealing or amending the statute, its necessary effect is to take the particular action out of the same, to create an exception thereto. No one has a vested right of property or immunity in the bar of the statute of limitations, as a defense to a promise to pay a debt or demand. *Campbell* v. *Holt,* 115 U. S. 620–629, 29 L. ed. 483–487, 6 Sup. Ct. Rep. 209.

Convinced that the decree was right, I am constrained to dissent from its reversal.