# State Hospital for Insane *v.* Danville & Mahoning Poor District, Appellant.

*Poor laws—Indigent insane—Liability of poor district to state hospital for insane—Estate of lunatic—Lunacy—Insanity.*

A poor district sent an indigent insane person to a state hospital for the insane, and agreed to pay the hospital $1.75 per week for her maintenance. This amount was paid to the time of the lunatic's death. The state hospital also received $2.00 per week from the state on account of the patient. The minimum charge for private cases was $4.00 per week. After the death of the lunatic, it appeared that she had an estate. It also appeared that the justice of the peace who signed the order of relief was the agent of the estate, and was also the treasurer of the poor district. He paid into the treasury of the district from the income of the estate the weekly amount which the district paid to the hospital. It did not appear that the overseers of the poor knew anything of this arrangement. The hospital claimed to recover from the poor district the difference between $4.00 per week and $1.75 per week for the time during which the lunatic had been an inmate of the hospital. *Held,* that the hospital was not entitled to recover anything from the poor district.

Argued March 2, 1908. Appeal, No. 50, March T., 1908, by defendant, from judgment of C. P. Montour Co., May T., 1907, No. 48, for plaintiff on trial by the court without a jury in case of Trustees of State Hospital for Insane at Danville, Pa., v. Danville & Mahoning Poor District. Before RICE, P. J., PORTER, HENDERSON, ORLADY, HEAD and BEAVER, JJ. Reversed.

Assumpsit for the board of lunatic.

The case was tried by EVANS, P. J., without a jury.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was in entering judgment for plaintiff in the sum of $100.80.

*Wm. Kase West,* for appellant.—Under the law, the trustees have a right to fix the. amount to be paid for insane patients, and did accept Catherine Hahn from the said poor district and fixed the price at $1.75 per week, are bound by the contract and are not entitled to recover in this action.

Under the act of 1889 all that any poor district is liable for, that commits any of its charges to a hospital, is the sum of $1.75 per week, even though it should afterwards appear that the pauper had property or became heir to the same: Danville State Hospital v. Poor Overseers, 163 Pa. 175; Com. v. Tait, 14 Pa. Dist. Rep. 264; Lower Augusta Twp. v. Northumberland County, 37 Pa. 143; Wertz v. Blair County, 66 Pa. 18.

*R. Scott Ammerman,* for appellee, cited: Directors of the Poor, etc., v. Nyce, 161 Pa. 82; Danville State Hospital v. Poor Overseers, 163 Pa. 175; Brush Valley Twp. Poor Directors v. Allegheny County Poor Directors, 25 Pa. Superior Ct. 595; Edenburg Borough Poor Dist. v. Poor Dist. of Strattanville Borough, 5 Pa. Superior Ct. 516.

OPINION BY BEAVER, J., April 20, 1908:

The record in this case raises no question as to the standing of the parties to the suit.  The case was tried before the court without a jury, and it is admitted upon the record that both plaintiff and defendant are corporations, or at least quasi corporations, capable of suing and being sued.

The court, in its opinion discharging the exceptions, states as a fact that "Under the Act of April 15, 1869, P. L. 1042, the order of relief offered in evidence appears to be good and valid, so far as an order of relief is concerned."

Assuming this to be so, the defendants, under a regular order of relief, undertook the care and custody of an indigent person within their jurisdiction.  Finding that person to be insane, upon the regular certificate of two physicians, they committed her to the Hospital for the Insane at Danville, and entered into a bond conditioned for the payment of $1.75 per week for her maintenance.  This amount was paid to the time of her death and was received and receipted for by the hospital authorities.

It is testified by the superintendent of the hospital: "Q. Doctor, you are the superintendent of the Hospital for the Insane at Danville, Pa.? A. Yes, sir. Q. It has been admitted in this case that Catherine Hahn was committed to your charge and care by the overseers of the Danville & Mahoning Poor District; that is true? A. That is correct. Q. Doctor, what compensation, if any, have you received from the Danville & Mahoning Poor District on account of the care and maintenance furnished this alleged pauper, Catherine Hahn? A. We were paid the legal rate of $1.75 per week for the time she was in the institution as an indigent case. Q. Whether or not, Doctor, was this charge of $1.75 per week in accordance with the practice of your department? I mean of your institution? A. Yes, sir. That covers a part of the expense, the state making up the balance of the limit of $2.00 per week. Q. State to the court your reason for making a specific charge of $1.75. A. That is the rate fixed by the legislature. Q. In what cases? A. In all indigent cases." Subsequently, on cross-examination, after the witness had stated that in private cases the minimum charge is $4.00 per week, which includes all costs except that of clothing, he was asked: "Q. Did the state pay to your institution the $2.25, the balance of the amount that you claim that it cost you to keep this pauper? A. No, sir. Q. You have not been paid anything toward the support of this pauper up there, except by the Danville & Mahoning Poor District? A. Yes, sir. Q. How? A. Through the state. The amount paid by the state is limited to $2.00 per week and that is practically the amount we received from the state in addition to the $1.75. Q. Under the act of 1889, where the poor board are to pay $1.75 and not to pay $2.00, which is paid by the state? A. Yes, sir."

It, therefore, appears that the plaintiff was paid, in addition to the $1.75 paid by the defendant, the sum of $2.00 per week by the state, which is the amount fixed by the first section of the Act of May 21, 1889, P. L. 258. It seems to us, therefore, very clear that, if the defendant were liable for anything, it could only be the difference between $4.00 per week claimed by the plaintiff, as the minimum charge to a private patient, and

$3.75 per week which had already been paid—$1.75 by the defendant and $2.00 by the state. There is no allegation here that a recovery is sought for the commonwealth which has paid $2.00 for the maintenance of the person, for whose support the defendant is sought to be held.

It is to be noted that no fraud is charged in the plaintiff's statement of claim. It is based upon a contract and sets forth that "The plaintiff's demand is founded upon the assumption of the defendant to pay the said plaintiff the sum of four dollars per week from the date of commitment of said Catherine Hahn, to wit, from May 1st, 1903, to the 11th day of January, 1904; of which sum defendant has paid plaintiff the sum of sixty-four dollars, leaving due and payable to plaintiff the sum of eighty-two dollars and twenty-eight cents, together with interest thereon from the 11th day of January, A. D. 1904." It is needless to say that there was no assumption, either express or implied, to pay $4.00 per week.

We are clearly of opinion that, under this statement of claim, the defendant was not liable. Under an order of relief, found by the court to be "good and valid," the person committed to the hospital was taken in charge by the overseers of the defendant district, as an indigent person. The order of relief was an adjudication of that fact, if it was good and valid as found by the court, to which there is no exception, nor as to which is there any objection here. It was not necessary for the overseers to make inquiry as to the fact of the poor person being indigent. After the death of the person so committed to the Hospital for the Insane, it was discovered that she had been possessed of certain real estate, which was subsequently sold, and a balance of—say $1,000 was in the hands of the orphans' court for distribution. The fact in regard to this property is not denied, but that fact imposes no liability upon the defendant.

In order to sustain the contention on the part of the plaintiff that such liability is created, the case of Directors, etc., v. Nyce, 161 Pa. 82, is cited. Nothing in this case, however, sustains such a contention. What is therein decided is that, "Under the Act of June 13, 1836, P. L. 539, an estate acquired by a

pauper after he has become a charge on the public is liable for his previous maintenance." In the opinion of the court below, which is commended in the opinion of Mr. Justice Fell, it is said, referring to the act of 1836: "If this act does not cover the case before us, it is difficult to see the purpose of the enactment. The man who has an estate sufficient to provide for his maintenance at the time he makes application for charity is not in fact a pauper, and the authorities are not obliged to furnish the support. If he gains admission through false statements, his estate is liable, without any statutory provision : Inhabitants of Stow v. Sawyer, 85 Mass. 515." Whilst this is a clear authority for the proposition that the estate of the poor person is liable, as is undoubtedly the case, it does not in any sense or in any view of it sustain the contention of the appellee here.

If this were an action by the plaintiff to recover against the estate of the decedent the difference between the price charged for a private patient and that provided by law for the care of an indigent insane person, the case would be entirely different. Whether or not a recovery could be had for the use of the commonwealth for the amount paid toward the maintenance of the deceased is not now before us and need not be considered.

It appears that the justice of the peace who signed the order of relief was made the agent of the estate of the decedent and was authorized to pay out of the rents of her real estate the amount to be paid by the defendant poor district, but it is not alleged, and is certainly not proved, that the overseers of the poor knew anything of this arrangement. It seems to be admitted that this amount was paid into the treasury of the defendant, the justice of the peace who signed the order of relief being also the treasurer of the poor district. The defendant, therefore, has no claim upon the estate of the decedent and we are clearly of the opinion that the plaintiff has no claim upon the defendant. The fact, as stated by the trial judge in disposing of the case, that "Neither counsel for the plaintiff or defendant presented any requests for findings of facts or conclusions of law in this case," may have led to the failure to find the facts as fully as the testimony warranted and required.

Being satisfied, from a full consideration of all the facts

which appear in the testimony, that there is no liability upon the part of the defendant to the plaintiff, we feel compelled to reverse the judgment.

Judgment reversed.