(22 Misc. Rep. 48.)

## LONG ISLAND STATE HOSPITAL v. STUART.

(Supreme Court, Special Term, Kings County.   December, 1897.)

INSANE PERSONS—LIABILITY OF FATHER TO SUPPORT—PLEADING—INSUFFICIENT ALLEGATIONS.

   Under Laws 1874, c. 446, tit. 1, §§ 12, 13, and Laws 1896, c. 545, § 66 (substituted therefor), making it the duty of a father to cause his insane son to be properly cared for and maintained, and Laws 1897, c. 460, providing that actions at law for the support of inmates of state hospitals shall be brought, in the name of the hospital, against any relative liable therefor, such an action could not be maintained against the father of an inmate, where the complaint rested solely on allegations that the son had been duly committed as an insane person, and that defendant, though possessing sufficient means, refused to pay the board bill as fixed by the commission, but contained no allegations that such patient was a minor, or that defendant was in any way connected with, or cognizant of, the proceedings by virtue of which he was so committed, or that he knew of such commitment, or that he had refused or neglected to care for and support his son, or that his liability to support him in such institution had been fixed by any judicial order.

   Action by the Long Island State Hospital against William A. Stuart.   On demurrer to the complaint.   Demurrer sustained.

   Frank A. Butler, for plaintiff.
   Nathaniel H. Clement, for defendant.

   HIRSCHBERG, J.   This action is brought to recover the sum of $278.60, with interest from January 1, 1897.   The complaint alleges: (1) The incorporation of the plaintiff as an institution for the care, treatment, and maintenance of incompetent persons.   (2) The legal commitment of William H. Stuart to the Flatbush Insane Asylum June 3, 1893; the transfer of that asylum to the state October 1, 1895; its change of name at that time to its present name as plaintiff above entitled; and the continuance of said Stuart as an inmate from October 1, 1895, to June 1, 1897, a period of $74\,2/7$ weeks.   (3) That the said patient, William H. Stuart, is without means, has no committee, and is the defendant's son, and that the defendant is the owner of certain valuable real estate in the city of Brooklyn, and is otherwise a man of large means, and of sufficient ability to properly care for and maintain his son.   (4) That the state commission in lunacy fixed the rate for the care, medical treatment, and maintenance of the said patient from October 1, 1895, to June 1, 1897, at $3.75 per week, amounting to $278.60 in the aggregate.   And (5) that no part of said sum has been paid, although payment thereof has been frequently demanded.

The ground of demurrer is that the complaint does not state facts sufficient to constitute a cause of action; and the question presented is whether an action at law may be maintained, under the provisions of the insanity law (chapter 545, Laws 1896), to recover from the father of an adult insane son, committed prior to the passage of that act, the rate fixed for the latter's maintenance in the institution, as a liquidated debt. If such an action will lie, it must be by force of some statute, and none is cited by the plaintiff's counsel expressly conferring such right of action. It will be observed that the complaint contains no allegations to the effect that the patient is a minor, or that the defendant was in any way connected with, or cognizant of, the proceedings by virtue of which he was originally committed as an insane person, or that he knew of such commitment, or that he had refused or neglected to care for and support his son, or that his liability to support him in a public institution has been in any way fixed by judicial order. The nature of the proceedings resulting in his commitment is not disclosed. The complaint rests solely upon the allegations that the son has been duly committed as an insane person, and that the defendant, although of sufficient means, refuses to pay the board bill as fixed by the commission. If, therefore, the action can be maintained, it follows that the relative may be made liable, without an opportunity to contest the question of the alleged insanity, and without any default in the discharge of the duty primarily resting upon him to care for and support his son outside of the asylum. My attention has not been directed to any statute expressly conferring this right of action; but the plaintiff relies upon the general provisions of chapter 446 of the Laws of 1874, and its substitute, the insanity law (section 66), by which it is made the duty of a father to cause his insane son to be properly and suitably cared for and maintained, and upon the provision of chapter 460 of the Laws of 1897, to the effect that actions at law for the support of inmates of state hospitals shall be brought, in the name of the hospital, against any relative who may be liable therefor under the provisions of the insanity law. The law of 1874 was repealed by the later enactment. By the act of 1874 (section 12, tit. 1), it was made the duty of the father (among other relatives), if of sufficient ability, to provide a suitable place for the confinement of his lunatic son, and to confine and maintain him in such manner as should be agreeable to the provisions of the act. If the father was not of sufficient ability to maintain him, then the authorities could order him to be sent to an asylum. By section 13 it was further provided that the overseers and superintendents of the poor should have the same remedies to compel the relatives to confine and maintain the lunatic, and to collect the costs and charges of his confinement, as are given by law in the case of poor and impotent persons becoming chargeable to any town. This provision involved a judicial investigation on notice, and the determination, by judicial order, of the facts of indigence and lunacy, of the pecuniary responsibility of the relative sought to be charged, and of his failure to properly care for and support the afflicted individual. It will be seen that section 66 of the insanity law contains a provision substantially analogous. The duty to suit-

ably care for and maintain the lunatic is re-enacted, and power is conferred upon the commissioners of charities and correction in Brooklyn to "inquire into the manner in which any such person is cared for and maintained." If, in their judgment, he is not properly or suitably cared for, they may apply to a judge of a court of record for an order to commit him to a state hospital; but such order shall not be made unless the judge finds and certifies in the order that such insane person is not properly or suitably cared for and maintained by such relative. Chapter 460 of the Laws of 1897 does not create any liability, but merely provides that the action to enforce a liability existing under the terms of the insanity law shall be brought in the name of the state hospital. Section 68 of the insanity law relates to dangerously insane persons. The father is therein required to provide a suitable place for his lunatic son's confinement, and, upon his refusal or neglect to do so, legal proceedings may be instituted, and a commitment ordered upon proper proof. It seems to me that the scheme of the law is to require, primarily, that the support of the indigent insane shall devolve upon the relative, that only upon failure or refusal to discharge that duty is care assumed by the state, and that, before any relative can be legally charged with liability for the board of the patient in the state institution, an order must be made establishing the remissness of such relative, and directing the confinement of the patient at his charge and expense. The provision of the law of 1874 conferring authority to collect the costs and charges of the confinement of the insane person does not appear to have been re-enacted. If the patient, however, has been committed under that act, it might well be held that his father would continue to be liable for his support, and at the asylum rates. But, as has been seen, there is no allegation in the complaint to the effect that the patient was committed under that act, or under any other act making the father liable for his support. And, as the present insanity law does not make the relative liable for the costs and charges of maintenance in the hospital, I can find no provision, and the plaintiff's brief suggests no provision, under which this action can be maintained.

My attention has been called to the case of Goodale v. Lawrence, 88 N. Y. 513. That was an action brought to recover for the support of an insane wife, and the verdict for the plaintiff was affirmed upon the common-law obligation of the husband to support his wife. The superintendent of the poor was permitted to recover in the same way, and on the same ground, that a private citizen would be permitted to recover who had furnished her the support which the husband had refused. The liability was not based on the obligation to support, but on the failure to fulfill it, and the refusal of the husband to support his wife was the essential allegation. The case would be more in point were William H. Stuart a minor. But the liability to support an adult son is statutory, and the statute creating it must furnish in express terms its measure and extent. If it be claimed that when the statute creates the general liability the relation of the parties becomes the same as at common law, and that, accordingly, any one may recover for necessaries, the fact still remains that there must be proof of neglect on the part of the relative to supply the

necessaries, in order to justify a third person in supplying them at the expense of the delinquent.    The demurrer is sustained, and judgment directed for the defendant, with costs.

Demurrer sustained, and judgment for defendant, with costs.