---

(94 Misc. Rep. 29)

In re WILLIS' ESTATE.

(Surrogate's Court, Bronx County. February, 1916.)

1. INSANE PERSONS ⟨key⟩53—LIABILITY FOR SUPPORT.

The claim of a state insane hospital against the estate of decedent for maintenance of her daughter cannot be maintained for a period after decedent's death.

[Ed. Note.—For other cases, see Insane Persons, Cent. Dig. §§ 84, 85; Dec. Dig. ⟨key⟩53.]

2. PARENT AND CHILD ⟨key⟩3(1)—SUPPORT OF CHILD—LIABILITY OF PARENT.

There being no duty at common law upon a parent to support an adult daughter, any liability of decedent's estate for such support must have been imposed by some statute.

[Ed. Note.—For other cases, see Parent and Child, Cent. Dig. §§ 33-51; Dec. Dig. ⟨key⟩3(1).]

3. INSANE PERSONS ⟨key⟩53—CUSTODY AND SUPPORT—MAINTENANCE IN STATE INSTITUTION.

Under Insanity Law (Consol. Laws, c. 27) § 86, requiring the father, mother, husband, wife, and children of an insane person, if of sufficient

ability, to cause him to be properly cared for, and providing for application to the court for an order of commitment to a state hospital, but prohibiting such order unless the judge finds that the insane person is not properly cared for by a relative or committee, and Code Cr. Proc. § 914, making relatives of a poor insane person, legally committed to an institution supported in whole or in part by the state, liable, if of sufficient ability, for the maintenance of such insane person in the institution, no liability rests upon a relative for maintenance of an insane person in a state institution, in the absence of an order of the court directing confinement of the patient at his charge and expense.

[Ed. Note.—For other cases, see Insane Persons, Cent. Dig. §§ 84, 85; Dec. Dig. ☞53.]

4. INSANE PERSONS ☞53—LIABILITY FOR SUPPORT.

A claim against the estate of decedent for maintenance of her daughter in the state insane hospital, beginning when decedent was 84 years of age and decedent's estate was worth less than $5,000, and she had no other source of income, cannot be sustained.

[Ed. Note.—For other cases, see Insane Persons, Cent. Dig. §§ 84, 85; Dec. Dig. ☞53.]

Proceeding for the judicial settlement of the account of the executors of Phebe Willis, deceased. Decree entered that account proceed to settlement as filed.

Charles P. Hallock, of New York City, for executor.
Morris Schector, Deputy Atty. Gen., for claimant.
Thomas M. Simonton, of New York City, for legatee.
Louis A. Moskowitz, of New York City, special guardian, for incompetent.

SCHULZ, S. This proceeding is brought for the judicial settlement of the account of the executor of the last will and testament of the decedent. The latter left her surviving two sons and one daughter, and the gross amount of her estate at the time of her death was $4,990.40. It appears uncontradicted that the daughter has been confined in the Hudson River State Hospital for the Insane since April 23, 1894.

A claim has been presented to the executor verified by the executive officer of the Hudson River State Hospital for the sum of $1,385.50, alleged to be the fair and reasonable value of the maintenance of this daughter of the decedent from July 1, 1908, to July 31, 1910, stated to be $108^5/7$ weeks, at $3.50 per week, and for the period of 201 weeks, from August 1, 1910, to June 7, 1914, at the rate of $5 per week. This claim was rejected by the executor. There was some reference upon the trial to an alleged amended claim, but counsel for the claimant states that he seeks to rely upon the original claim heretofore referred to in the sum of $1,385.50, and it is this claim which has been tried and is now to be determined. Code Civ. Proc. § 2681.

[1] The decedent died March 1, 1914. It is evident that the alleged claim against her, which is now urged against her estate, cannot be for any maintenance or care of her daughter beyond said date, so that, if any recovery at all may be had upon the claim, that recovery must be for maintenance between July 1, 1908, and March 1, 1914, and not up to June 7, 1914, the date fixed in the claim.

The evidence offered by the claimant consists of a copy of a certificate of the county judge of Westchester county, made on April 23, 1894, by which he certifies to his approval of the medical certificate of lunacy upon which it is indorsed, and states that it is being represented to him that it is intended to commit the said daughter to the Hudson River State Hospital for the Insane for care and treatment. This certificate is referred to by counsel as the commitment. In addition to this certificate there was received in evidence a copy of a resolution adopted at a meeting of the state commission in lunacy, by which the said commission fixed the rate to be paid for the support of inmates of state hospitals, "for a reimbursing rate," so called, "as provided by the Insanity Law," at $5 per week, which resolution was to take effect from August 1, 1910, and continue in force until further action by the commission. This resolution also provided that the action taken should not apply to patients admitted under special agreements, and reserved the right to the commission to modify the rate as to individual patients in particular cases. Two witnesses were called by the claimant, whose testimony shows that the daughter of the decedent has been an inmate of the institution in question during the time for which the claim is made. It also appears that the daughter was over 21 years of age and unmarried at the time she entered the institution, and had no property of any kind. Upon this evidence claimant contends that the institution in question is entitled to recover upon the claim presented.

[2, 3] There was no duty imposed upon the decedent under the common law to support the daughter in question. If, therefore, such a liability attached to the mother, it must have been one imposed upon her by some statute. Matter of St. Lawrence Hospital, 13 App. Div. 436, 43 N. Y. Supp. 608; Matter of Condon (D. C.) 198 Fed. 947. The claimant contends that such statutory liability is created by section 86 of the Insanity Law, being Laws of 1909, chap. 32, and constituting chapter 27 of the Consolidated Laws, and by section 914 of the Code of Criminal Procedure.

Section 86 of the Insanity Law, so far as material, provides:

"The father, mother, husband, wife and children of an insane person, if of sufficient ability, * * * shall cause him to be properly and suitably cared for and maintained. * * * In the city of New York, the commissioners of public charities, may inquire into the manner in which any such person is cared for and maintained; and if, in the judgment of any of them, he is not properly or suitably cared for, may apply to a judge of a court of record for an order to commit him to a state hospital under the provisions of this article, but such order shall not be made unless the judge finds and certifies in the order that such insane person is not properly or suitably cared for by such relative or committee."

Section 914 of the Code of Criminal Procedure, contained in part 6 thereof, embracing special proceedings of a criminal nature, so far as material, provides:

"The father, mother, husband, wife or children of a poor insane person legally committed to and confined in an institution supported in whole or in part by the state, shall be liable, if of sufficient ability, for the support and maintenance of such insane person from the time of his reception in such institution."

Section 915 provides that if a relative of a poor person fails to relieve and maintain him, as provided in the last section, the commissioners of public charities in the city of New York may apply to the Court of General Sessions of the county of New York, or to the Supreme Court of the state of New York, or to the County Court of any other county where the poor person dwells for an order to compel such relief upon at least five days' written notice served personally or by leaving it at the last place of residence of the person to whom it is directed, and, if such poor person be insane and legally committed to and confined in an institution supported in whole or in part by the state, and his relatives refuse or neglect to pay for his support and maintenance therein, application may be made by the treasurer of such institution, in the manner provided in this section, for an order directing the relatives liable therefor to make such payment. Section 916 provides that at the time appointed in the notice the court or a judge thereof must proceed summarily to hear the allegations and proofs of the parties, and must order such of the relatives of the poor person mentioned ·in section 914 as were served with the notice and are of sufficient ability to relieve and maintain him, and, if the application is made to secure an order compelling relatives to pay for an insane poor person confined in an institution supported by the state, such order shall specify the sum to be paid for his maintenance. The section also contains a final provision to the effect that relatives who are served with the notice shall be deemed of sufficient ability unless the contrary shall affirmatively appear. Such an order would be a final determination and has been held to be in effect a judgment. Aldridge v. Walker, 73 Hun, 281, 26 N. Y. Supp. 296.

In the matter before me, although the incompetent was an inmate of the hospital in question for over 19 years, there is no proof that any claim was ever made upon the mother for any moneys to defray the former's support and maintenance. It does not appear that any order was ever made, upon notice to her or otherwise, fixing her liability or directing that she pay any fixed sum for the maintenance of the incompetent, nor is there any evidence to show that the decedent ever had notice of the resolution fixing the rate of compensation upon which the present demand is at least partially based. It does appear from exhibits in evidence that from time to time the decedent was notified by the superintendent of the hospital that her daughter was in need of specified articles of clothing and requesting that the same be sent, and there was evidence tending to show that twice a year the decedent did send articles of clothing, and that she also sent small amounts of money for luxuries for her afflicted child; but there is nothing to show that she was ever requested to do any more. The question presented, therefore, is whether, without any order such as is referred to in the sections of the Criminal Code above cited, and without any opportunity to be heard upon the question of ability, and without any notice of the resolution referred to, the decedent at the time of her death was nevertheless liable for an amount which, if it had been collected at that time, would have taken from her over 27 per cent. of her entire property.

I am of the opinion that, as the liability for the maintenance of the incompetent was purely a statutory one, it is incumbent upon the claimant in question before it can recover to show that it has taken all the steps required by statute to create and fix the liability (Herendeen v. De Witt, 49 Hun, 53, 1 N. Y. Supp. 467), and it must be enforced in the manner provided by the statute (County of Oneida v. Bartholomew, 82 Hun, 80, 31 N. Y. Supp. 106, affirmed 151 N. Y. 655, 46 N. E. 1150; Edwards v. Davis, 16 Johns. 281). In Long Island State Hospital v. Stuart, 22 Misc. Rep. 48, 49 N. Y. Supp. 372, there was under consideration section 66 of chapter 545 of the Laws of 1896, which, with the exception of a slight change not material to the present controversy, is now embodied in section 86 of the Insanity Law. In that case the learned justice writing the opinion says:

"It seems to me that the scheme of the law is to require primarily that the support of the indigent insane shall devolve upon the relative, that only upon failure or refusal to discharge that duty is care, assumed by the state, and that before any relative can be legally charged with liability for the board of the patient in the state institution, an order must be made establishing the remissness of such relative, and directing the confinement of the patient at his charge and expense."

This is my view of the law. I do not read Matter of Wesley, 156 App. Div. 403, 141 N. Y. Supp. 1031, cited by counsel for the claimant, as holding to the contrary. In that case the question involved was whether the claim against the estate of an incompetent was a preferred claim. The matter now at issue does not appear to have been under consideration.

[4] At the time when this claim is stated to have begun to run, the decedent was about 84 years of age. She had no property except the sum of $1,500 in a savings bank and about $3,000, which was the amount she had received when she sold her home. The evidence is that she had no other source of income. Assuming that her whole estate amounted in round figures to $5,000, her income under normal conditions would have been $250 per year. I seriously question whether under such circumstances any court or judge would have required her to use up a part of the principal of her estate in maintaining her afflicted daughter and in this way gradually impoverish herself. There is nothing before me to show that her daughter was committed to the asylum upon the application of the decedent or with her consent, and no evidence of the reasonable value of the former's maintenance in the institution in question or the fixing of a rate therefor prior to the resolution referred to which became operative in August, 1910. Under such circumstances, I should be inclined upon the facts to hold that no case was made out, if I were not of the opinion above expressed that no liability existed.

It follows from the above observations that the claim must be dismissed, and the account be permitted to proceed to settlement as filed. Enter decree accordingly as provided by rule 16. Decreed accordingly.