In the Matter of the Final Accounting of JAMES F. NUGENT, as Executor, etc., of JOSEPH FOX, Deceased, Committee of the Person and Property of HELEN G. FOX, an Incompetent Person.

JAMES F. NUGENT, as Executor, etc., of JOSEPH FOX, Deceased, Committee, etc., of HELEN G. FOX, an Incompetent Person, and ÆTNA ACCIDENT AND LIABILITY COMPANY (Now ÆTNA CASUALTY AND SURETY COMPANY), Appellants, Respondents; MORTIMER MAY, as Special Guardian for HELEN G. FOX, an Incompetent Person, Respondent, Appellant; EDITH M. HALL, as Substituted Committee of HELEN G. FOX, an Incompetent Person, Respondent.

Second Department, February 19, 1937.

*George N. Brickfield,* for the petitioner-appellant.

*Walter H. Pickett,* for the appellants Ætna Casualty and Surety Company and James F. Nugent.

*Mortimer May,* special guardian.

CLOSE, J.   Joseph Fox and Helen G. Fox were married in 1891, and lived together as husband and wife until February 3, 1915, when the wife was committed to the Kings Park State Hospital. During her marriage the wife had accumulated a fund of some $2,300, on deposit in the Dime Savings Bank of Williamsburgh, which she had saved from moneys given to her by her husband.

She also had, in a savings bank in Albany, about $500, which had been a gift from her grandfather, and some articles of jewelry valued at $700.

Upon the commitment of his wife to the State hospital, Fox was requested to pay ten dollars per month for her care and maintenance. He made these payments out of his own funds for a short time, but by May, 1917, had become about eighteen months in arrears. A proceeding was thereupon instituted by the Attorney-General for the appointment of a committee of the incompetent's estate, and on June 26, 1917, an order was made appointing the husband, Joseph Fox, as committee upon the filing of a $7,000 bond. The bond was filed and a commission issued on August 3, 1917. The order appointing the committee directed that out of the funds of the incompetent coming into his hands, the committee should pay " such sums of money as may be now due and may hereafter become due for the support and maintenance of such incompetent person."

Thereafter the payments necessary for the incompetent's support were made by the committee entirely out of her estate. The principal expenditures were for board and maintenance at the State hospital, clothing, premiums on the committee's bond, and rental of a safe deposit box. Up to the end of the year 1930, the total expenditures made out of the estate were $3,336.14. During the same interval, the incompetent received additional moneys totalling $3,325.90.

Joseph Fox died on February 10, 1931. The petitioner was appointed executor of his estate, and in April, 1933, he applied for a judicial settlement of the account of the deceased as committee. A special guardian was appointed and filed a report recommending that proof be taken on the question of the husband's ability to support his wife during the period of her incompetency.. An order was made referring the matter to an official referee to take proof on that question. The hearings proceeded before the official referee and another referee subsequently substituted. During the hearings, Edith M. Hall was appointed substituted committee of the estate of the incompetent and filed formal objections to the account.

The referee found that Joseph Fox had had sufficient means during his lifetime to provide his wife with necessaries, and recommended that his estate be surcharged to the extent of the payments made out of the incompetent's estate for hospital care and mainte-nance and clothing. The referee declined to pass on the question whether the incompetent's estate was entitled to dower in two

parcels of realty claimed to have been owned by her husband, holding that that question was not properly before him in this proceeding. He recommended that the committee's estate be refused commissions and that counsel to the accounting party be denied an allowance out of the incompetent's estate. The court confirmed the referee's report except on the question of commissions and allowances to counsel.

A question arises at the outset concerning the duty of a husband to support his incompetent wife. The proper rule seems to be that the husband is liable for the support of his incompetent wife, if he is financially able, unless it would be inequitable to compel him to furnish support. Section 80 of the Mental Hygiene Law provides: " The father, mother, husband, wife and children of an insane person, if of sufficient ability, and the committee or guardian of his person and estate, if his estate is sufficient for the purpose, shall cause him to be properly and suitably cared for and maintained."

The husband's ability to furnish support is thus made a condition to the obligation. At the same time it was held in *Empire Trust Co.* v. *Fell* (271 N. Y. 72) that, in an action at law brought by the committee of an incompetent wife against the husband to recover for necessaries furnished to the incompetent, an equitable defense alleging that the wife possessed a separate estate, that the husband's resources had been greatly reduced, and that if the incompetent were of sound mind she would not have sought support from her husband, was legally sufficient. It seems to be the rule, therefore, that the husband will not be charged for his incompetent wife's support where such a requirement would be inequitable.

A careful examination of the record convinces us that the referee correctly decided the main issue of fact in the case. Granting all that is said by the appellant surety company about the age and condition of health of the deceased during the latter years of his life, his inability to work, and his indigent condition at the time of his death, it is nevertheless the fact that during this period he came into possession of three sums of money aggregating more than $12,000. Out of these funds he could have provided the very modest amounts required for the maintenance of his wife, which totalled only about $200 per year, and under the circumstances it is not inequitable to hold that he should have done so.

The appellant surety company argues, however, that the provisions of the order made in 1917, appointing the committee and directing that the committee pay for the support and maintenance of the incompetent out of her estate, conclusively established the liability of the committee and relieved the husband of any obligation

to support his wife. That view is incorrect. The order obligated the committee to pay the State for the incompetent's maintenance. It did not purport to pass on the question of the husband's liability over to the committee. Even if it had passed on that question and had determined it in the husband's favor, the order would not have been conclusive if subsequently (as actually happened) the husband's circumstances had changed by the acquisition of substantial sums of money.

A similar situation was passed on by this court in *Matter of Marsh* (242 App. Div. 290). There an order had been made denying the application of a husband to be relieved of his obligation to support his incompetent wife, and declaring further that the committee was under no duty to pay for the support of the incompetent at a State hospital. We held that the order thus made did not bar a subsequent order directing the committee to pay the State hospital for past maintenance. The conclusion follows that an order directing payment for the wife's maintenance by one of the two persons possibly liable does not operate to exempt the other from ultimate responsibility.

The appellants advance the further argument that, whatever may be the extent of the husband's obligation, he can be held liable for the support of his incompetent wife only if an order to that effect has previously been made; and that, even in that event, he is liable only for expenses incurred after the making of the order. This contention is based principally upon *Long Island State Hospital* v. *Stuart* (22 Misc. 48) and *Matter of Willis* (94 id. 29). In the first of these cases the court expressed the opinion that " before any relative can be legally charged with liability for the board of the patient in the State institution, an order must be made establishing the remissness of such relative, and directing the confinement of the patient at his charge and expense."

A similar opinion was expressed in the *Willis* case. Both of these cases were concerned with the liability of a parent for the support of an adult incompetent child. The liability was purely statutory. Here, the liability for support existed at common law. Certainly, if the wife had remained competent, no order would have been necessary to charge the husband for her maintenance, and it would seem anomalous if the fact of her incompetence operated to relieve the husband of his obligation until the court had taken affirmative action.

In *Matter of Cornell* (240 App. Div. 996) this court had an appeal from an order giving instructions to a committee which provided in part that the committee should pay the State for the support

of the incompetent at a State hospital out of the funds of the incompetent. The committee raised the point that the husband, and not the committee, should be held liable for the incompetent's support. The court held that the question of the husband's liability was not properly before it. The same point arose again, however, in connection with the same estate, in *Matter of Cornell* (242 App. Div. 832) on an appeal from an order purporting to determine the respective liabilities of the husband and the committee for the support of the wife at the State hospital. There the court said: " The respective obligations of the husband and the committee for such care under sections 80 and 82 of the Mental Hygiene Law must be determined in a direct proceeding or action for the enforcement thereof when proof may be offered concerning the ability of such parties to pay."

That decision appears to mean that, in an appropriate action or proceeding, the husband may, if the facts warrant it, be held liable for his incompetent wife's support without regard to a previous order fixing such liability. The same conclusion can be drawn from *Matter of Marsh* (*supra*). In the more recent case of *Matter of Moore* (245 App. Div. 762) this court affirmed an order surcharging the committee of an incompetent, who was also her husband, for sums paid out of her estate for maintenance at a State hospital. It does not appear that any previous order had been made establishing the husband's liability.

Our conclusion on this question is that the husband's liability to the committee for his wife's support may be established in any proceeding or action in which both parties are before the court and the issue is fairly raised, and that no previous order of the court is necessary to set the liability in motion. We can find nothing in sections 80 or 82 of the Mental Hygiene Law requiring such an order. In a case like the present one, where the husband is also the committee, it is hardly possible that such an order would ever be obtained. The husband would, in his own interest, make payment out of his wife's funds. The State, having received payment, would have no incentive to proceed against any one. The husband, as committee, would not proceed against himself as an individual, and he would thus escape his obligation altogether, at least until his first accounting. We should not sanction a rule leading to that result.

There is no merit in the contention of the appellant surety company that error was committed in the admission of the testimony given by the witness Edith Hall, a sister of the incompetent.

The special guardian's cross-appeal is based on the claim that the incompetent is entitled to dower in the Hamilton Beach and

Wantagh properties. Fox never held title to either property, and his widow is, therefore, not entitled to dower even if her husband had title taken in the name of Nugent for the express purpose of defeating her dower right. (*Phelps* v. *Phelps*, 143 N. Y. 197; *Melenky* v. *Melen*, 233 id. 19.) Moreover, this claim is not properly raised in the present proceeding, because Nugent individually is not a party. The referee's determination on this question was, therefore, correct.

The only remaining question concerns the fees of the special guardian and counsel to the accounting executor. The referee recommended that counsel to the executor should receive no allowance for his services. The court allowed him seventy-five dollars and disbursements, payable out of the incompetent's estate. In our opinion, no such allowance should have been made. No one raises this point, and in fact the executor claims that the allowance to his counsel was inadequate. We think, nevertheless, that the incompetent should not be compelled to pay for legal services rendered in defending the improper action of her committee, and that the order should in this respect be modified.

The special guardian was allowed $200 and complains that this allowance was inadequate. The amount surcharged against the executor of the deceased committee was recovered largely through the efforts of the special guardian. His report precipitated the proceedings which resulted in the recovery of $2,910.56 for the incompetent. The successor committee was not appointed until after the hearings before the referee had been half completed. Up to that time, the special guardian had borne the main burden of the proceeding, and even thereafter he took an important part in the hearings. He is the only person who has filed a brief in opposition to the executor and surety company on this appeal. There is no doubt that he expended considerable time and labor in the incompetent's behalf and accomplished a beneficial result. His allowance should be increased to $400.

The referee also recommended that the estate of the deceased committee should not be allowed commissions. The court allowed commissions at the statutory rate. We find the allowance proper under the circumstances. The committee's conduct was not flagrantly wrongful. Fox may have been misled by the provisions of the order of appointment, in which he was directed to make payment out of the incompetent's funds.

The final order should be modified so as to provide that the allowance of a fee and disbursements to the attorney for the petitioner be struck out and that the allowance to the special guardian be increased to $400, and as so modified affirmed, without costs.

Present — Lazansky, P. J., Carswell, Davis, Adel and Close, JJ.

Final order settling the account of the deceased committee of an incompetent person modified so as to provide that the allowance of a fee and disbursements to the attorney for the petitioner be struck out and that the allowance to the special guardian be increased to $400. As so modified, the order is unanimously affirmed, without costs.