## In the Matter of the Estate of ABBOTT HESSNEY, Deceased.

Surrogate's Court, Ontario County, December 27, 1941.

Willis C. Ellis, for the Ontario County Trust Company, as executor, etc.

B. Bennett Brown, special guardian for Louise Baroody, incompetent, Mary Hessney, Victoria Hessney, Jennie Hessney, Nora Hessney, Joseph Hessney and Isaac Hessney, infants.

John J. Bennett, Jr., Attorney-General [James A. Noonan, Assistant Attorney-General, of counsel], for the Willard State Hospital, a creditor and an interested party.

CRIBB, S. This matter comes before the surrogate upon a claim presented by the Willard State Hospital in the amount of $4,384 for the support and maintenance of Louise Baroody, an incompetent person, against the estate of Abbott Hessney, her deceased father. This claim was rejected by the Ontario County Trust Company, as temporary administrator and executor of the estate of the said Abbott Hessney, deceased.

Abbott Hessney died testate on March 2, 1940, leaving him surviving his widow, Fada Hessney, and ten children, four of whom were by a former wife who died about 1926. Louise Hessney, one of four children by the decedent's first wife, married Thomas Baroody August 12, 1917, and resided with her said husband in the city of Geneva, N. Y., until her commitment to Willard State Hospital July 21, 1930, as an insane person. She was committed to said hospital upon the application of her husband, Thomas Baroody, and was twenty-nine years of age at the time. At the time of her commitment three children had been born of her marriage to Baroody, one of whom was twelve years old, another nine and one-half years old, and the youngest twenty-one months old.

The six children born of decedent's second wife, and who survived him, range in age from five to twelve years.

The claim of Willard State Hospital, amounting to $4,384, covers a period from March 2, 1934, to March 1, 1940, the weekly charge being fourteen dollars.

It appears that no claim has ever been made by the State upon Thomas Baroody for the care and support of his wife at Willard State Hospital, and that he has never paid anything for such maintenance, with the exception that he has provided his said wife with clothing and a few luxuries. The decedent, Abbott Hessney, was never called upon by the State to pay anything for the care and maintenance of his said daughter, Louise Hessney Baroody, to Willard State Hospital, and, therefore, never did contribute anything for such purpose.

At the time of his death Abbott Hessney was seized and possessed of personal property in the amount of $8,262.90 and real property, as appraised, amounting to $7,300. It further appears that at this time there remains in the hands of the executor cash of $892.60, personal property undisposed of in the sum of $5,989.75, and real property of the appraised value of $7,300. This represents the net amount of the estate after the payment of claims, funeral and administration expenses, and will be subject to the payment of legal commissions of the executors and the expenses of the accounting herein and this litigation.

The said decedent, Abbott Hessney, left a will which has been probated in this court whereby he gave to his surviving widow, Fada Hessney, for and during the term of her natural life, " use, rents, issues and profits " of all his estate, real and personal, and upon her death gave five dollars each unto the four children born of his first marriage and gave the remainder of such property to the six children born of his second marriage.

The claim of the State of New York for $4,384 against the estate of Abbott Hessney, deceased, for the cost of the maintenance at Willard State Hospital of Louise Baroody, his married daughter, and admittedly a poor and indigent adult person, covers a period of 313 1/7 weeks, prior to decedent's death, at the rate of fourteen dollars per week.

The incompetent being a married adult person and no agreement having been made for her maintenance, there could be no liability imposed upon her father or his estate for the cost of her maintenance, except by statute.

Section 914 of the Code of Criminal Procedure provides that " The husband, wife, father, mother, grandparent, child or grand-child of a recipient of public relief or of a person liable to become in need of public relief shall, if of sufficient ability, be responsible for the support of such person. Step-parents shall in like manner be responsible for the support of minor step-children. If such poor person be insane he shall be maintained in the manner pre-scribed by the Mental Hygiene Law. The father, mother, husband, wife or children of a poor insane person legally committed to and confined in an institution supported in whole or in part by the State, shall be liable, if of sufficient ability, for the support and mainte-nance of such insane person from the time of his reception in such institution."

Section 915 of the Code of Criminal Procedure provides in part as follows: " If such poor person be insane and legally committed to and confined in an institution supported in whole or in part by the state, and his relatives refuse or neglect to pay for his support and maintenance therein, application may be made by the treasurer of such institution in the manner provided in this section, for an order directing the relatives liable therefor to make such payment."

The order provided for in section 915 is by that section to be obtained upon application to the Supreme Court or the County Court " upon at least five days' written notice, served personally, or by leaving it at the last place of residence of the person to whom it is directed, in case of his absence, with a person of suitable age and discretion."

No application for the order permitted by section 915 has been made and the liability of decedent's estate, if any, must be determined as prescribed by the Mental Hygiene Law.

Section 79 of the Mental Hygiene Law has the title, " Liability for care and support of poor and indigent insane," but the section provides only for reimbursement to the State of " the costs necessarily incurred in the transfer of patients to State hospitals," and does not provide for reimbursement for the cost of maintenance of patients. It, therefore, has no application to the claim before me.

Section 80 of the Mental Hygiene Law has the title, " Liability for the care and support of the insane *other than the poor and indigent.*" (Italics supplied.) The incompetent, for whose maintenance claim is here made, being a poor and indigent person, it would at first seem that this section would have no application to the present claim. This section, however, does not appear to limit the operation of the section to the cost of maintenance of the " insane other than the poor and indigent," but applies to the poor and indigent as well.

The provisions of section 80 which are pertinent to the claim under consideration are as follows: " The father, mother, husband, wife and children of an insane person, if of sufficient ability, and the committee or guardian of his person and estate, if his estate is sufficient for the purpose, shall cause him to be properly and suitably cared for and maintained."

Subdivision 2 of section 24-a of the Mental Hygiene Law provides for the support of patients or inmates of State institutions who are neither poor nor indigent. Such section has no application to the claim now under consideration, for the maintenance of decedent's daughter, who is poor and indigent.

In support of its claim, the State presented evidence to the effect that the patient was poor and indigent and that her husband was not of sufficient ability to support and maintain her. No proof is to be found in the record that the claimant ever applied for or obtained an order of remissness directing the decedent to maintain his insane daughter, nor is there any proof that the claimant at any time made any demands upon the decedent or gave him any notice of any kind that it would look to him or his estate for the payment of the cost of maintenance of the incompetent.

In *Matter of Willis* (94 Misc. 29; affd., 175 App. Div. 933) the court in holding that the claim of the State of New York for the maintenance of a patient in the Hudson River State Hospital against the estate of the patient's mother should be dismissed, said: " I am of the opinion that as the liability for the maintenance of the incompetent was purely a statutory one, it is incumbent upon

the claimant in question before it can recover to show that it has taken all the steps required by statute to create and fix the liability (*Herendeen* v. *De Witt*, 49 Hun, 53), and it must be enforced in the manner provided by the statute. (*County of Oneida* v. *Bartholomew*, 82 Hun, 80; affd., 151 N. Y. 655; *Edwards* v. *Davis*, 16 Johns. 281.) In *Long Island State Hospital* v. *Stuart* (22 Misc. 48) there was under consideration section 66 of chapter 545 of the Laws of 1896, which, with the exception of a. slight change not material to the present controversy, is now embodied in section 86 of the Insanity Law. In that case the learned justice writing the opinion says: ' It seems to me that the scheme of the law is to require primarily that the support of the indigent insane shall devolve upon the relative; that only upon failure or refusal to discharge that duty is care assumed by the State; and that before any relative can be legally charged with liability for the board of the patient in the State institution an order must be made establishing the remissness of such relative, and directing the confinement of the patient at his charge and expense.' This is my view of the law."

The statutes now in force contain the same provisions as were found in the statutes at the time of the decision of the *Willis* case. I do not find that that decision has ever been overruled or reversed. By requiring the State to obtain an order establishing the remissness of one whom it intends to charge with liability, an opportunity is given to the one so proceeded against to present to the court facts respecting the financial ability of the other persons upon whom liability may be imposed, and the court is then in a position to require maintenance to be provided by those best able to provide it, and to give effect to the general legal responsibility of husbands for the support of their wives and fathers and mothers for the support of their minor children.

The decedent's daughter was a patient at Willard State Hospital from July 21, 1930, until the time of decedent's death. There is no proof that the State ever made any claim against the decedent in his lifetime for her maintenance. Its failure to do so during the period of nearly ten years prior to decedent's death constituted a waiver of its claim.

In *Matter of Cross* (99 Misc. 199) the court held that the claim of Binghamton State Hospital against the estate of a decedent for the care of her husband had been waived by failure of the claimant to make any claim against the decedent in her lifetime. The court there said: " I think she had a right to believe that there was no intention to look to her for contribution and that she worked to save money as she did in the belief that her earnings would be hers to enjoy or use in sickness or old age. It is true that this money is

of no present benefit to her, but if the Binghamton State Hospital could not have been allowed to sit passive while she was saving this money and then when she had an accumulation, perhaps in her old age or illness, suddenly confront her with a large bill for services, care and maintenance, neither can they do so after her decease. I think the failure to make any claim upon her or to give her any notice of a possible intention to make such claim, precludes the claimant from enforcing its claim at this time."

There is no proof of the reasonable cost and expense of maintaining the incompetent, and there is no proof in this case that the Commissioner of Mental Hygiene has ever fixed a rate of maintenance charges to be imposed for the care of Louise Baroody, the incompetent. The claim cannot be allowed without such proof.

Furthermore, I do not believe it was the intention of the Legislature to provide that the estate of any deceased person should be charged with the support of a patient or inmate in a State institution to such an amount as to leave his surviving widow and children penniless. This could easily happen if the position of the claimant herein is well founded. Subdivision 2 of said section 24-a of the Mental Hygiene Law, referring to patients " neither poor nor indigent," reads as follows: " The father, mother, husband, wife and children of a patient or inmate of a State institution in the department who is neither poor nor indigent, *if of sufficient ability*, the committee or guardian of his person and/or estate, *if his estate is sufficient*, and the trustee of any trust or fund established for his support, if *such trust or fund is sufficient*, shall be legally liable for the expense of the maintenance of such patient or inmate and shall be required to pay or to contribute to the cost of his maintenance at rates fixed by the Commissioner. If the property of such patient or inmate is sufficient the committee shall pay for institutional maintenance incurred prior to the appointment of the committee." It is to be noted that the father, mother, husband, wife and children are made liable " if of sufficient ability " (no mention is made of their estates); the committee or guardian of the patient is charged " if his estate is sufficient; " and the trustee of any trust or fund established for the patient's support is charged " if such trust or fund is sufficient." Turning to section 80 of the Mental Hygiene Law we find those charged for the support of an insane person are the father, mother, husband, wife and children " *if of sufficient ability* " (no mention of their estates), and the committee or guardian of the patient's estate, " *if his estate is sufficient for the purpose.*" It thus appears that the Legislature in enacting the provisions of the Mental Hygiene Law, relative to charging specified persons with the support of patients in State

institutions, had in mind the sufficient ability to pay of those other than the patient, and the sufficiency of the estate or fund of the patient. The only possible exception is the remedial subdivision 6 of said section 24-a which provides that the Commissioner " shall be entitled to recover up to the value of such property the cost of such care and treatment." This provision if taken literally would seem to establish a preference in payment over funeral and administration expenses and all creditors' claims, not only of the estate of the deceased patient but also of the estates of all other persons who may have been liable for the support of said patient in a State institution. Such a result would be absurd and, in view of all the other provisions of the Mental Hygiene Law, was never intended, in my opinion, by the Legislature. The Legislature has used these, or similar, expressions, " if of sufficient ability," too often to warrant the conclusion that it intended to make every specified person, or his estate, liable if he or it owned any property at all. It intended that the court, after examining all the facts and circumstances attendant upon each individual case, would then determine whether a sufficient ability to pay had been established. (See *Copeland* v. *Weber*, 175 Misc. 403.)

The executor's account has been filed in this estate. Upon the judicial settlement after paying executor's commissions, expenses of the accounting and allowances for services rendered the estate, including those upon this litigation, there will probably remain less than $10,000, of which the appraised value of real estate is $7,300, personal property, $5,989.75, and $892.60 in cash. There is no assurance that the property will bring the appraised value. Under the terms of decedent's will the widow will receive the income from this so long as she lives and upon her death it passes to her six children. Meantime, with no right to invade principal, she has the burden of supporting herself and six children the oldest of whom is only twelve years old. If the decedent had known that his estate might be charged with the payment of over $4,000 for the support of his adult married daughter in a State institution during his lifetime, it is most likely that he would have made more liberal provisions for his widow by his will. Forgetting, for the moment, the reasons hereinbefore stated, it seems neither just nor equitable to allow the State's claim herein and thereby reduce the corpus of the estate of which the widow will have the use to something less than $6,000 at best. If, as counsel for claimant maintains, a strict and correct interpretation of the law leaves no alternative other than to allow the State's claim, I would still feel as did the court in *Matter of Houg* v. *Houg* (159 Misc. 894) that it " sometimes becomes necessary for the court to chart and blaze a new path.".

I have not overlooked subdivision 6 of section 24-a of the Mental Hygiene Law, which provides that the Commissioner of Mental Hygiene may bring action against the estate of a person who dies leaving real or personal property, if any one for whose support he is or was liable received care and treatment in an institution of the department, and may recover up to the value of such property the cost of such care and treatment. This statute is remedial and applies only in cases where the person whose estate is sought to be charged was liable for the support of a patient in an institution of the department, and has no application to the claim before this court against the estate of the decedent who, for the reasons hereinbefore stated, was not liable for the support of Louise Baroody at Willard State Hospital.

It follows that the claim should be disallowed.

Let a decree, on notice, be made in conformity with this decision.