In the Matter of the Accounting of JEAN KENNEDY, as Administratrix of the Estate of GIUSEPPE DIELE, Deceased.

Surrogate's Court, Queens County, March 11, 1946.

*Louis Bennett* for petitioner.

*Thomas E. White* for Fidelity & Deposit Company of Maryland, respondent.

*Ignatius M. Wilkinson, Corporation Counsel* (*Philip Sokol* of counsel), for Commissioner of Welfare of City of New York, claimant-objectant.

SAVARESE, S. In this accounting proceeding the Commissioner of Welfare of the City of New York has filed a claim against the estate under sections 101 and 104 of the Social Welfare Law for relief furnished to decedent's daughter, Jean Kennedy, and her three children. The amount of the claim as amended on trial is $1,821.60 for public assistance and $292.36 for the cost of administration thereof. The period involved commenced in May, 1934, and terminated on March 6, 1943, the date of decedent's death. He was survived by his widow, a son and two daughters. Letters of administration were issued to the daughter, Jean Kennedy, on April 1, 1943.

The estate consisted solely of a savings bank account in the amount of $7,060.70. The net estate after payment of debts and funeral and administration expenses amounted to $6,200.54. The three children assigned their interest to their mother and the entire estate was distributed to her on August 14, 1943. On October 22, 1943, the Commissioner of Welfare served notice of his claim upon the administratrix.

The sole question is whether the decedent was of " sufficient ability " to support his daughter and grandchildren within the provisions of section 101 of the Social Welfare Law. The facts are not in dispute. At the time of his death decedent was seventy-two years old and his widow seventy. From 1934 to the date of his death he maintained a home in which he supported his wife, an invalid son who died on January 1, 1938, and at various times a daughter, Julia, George, her son, and a son Nicholas together with the latter's wife and three chil-

dren. During this time he had a savings account of unexplained origin in the Long Island City Savings Bank which in May, 1934 amounted to $7,431.64. This was drawn down to $7,000 on January 4, 1938, soon after his son died. Thereafter interest was withdrawn at regular intervals but there were no further withdrawals of principal. Decedent's sole income and means of support was this bank interest, intermittent contributions from the daughter, Julia, and the son, Nicholas, and approximately $15 to $20 a week which decedent earned in a small retail ice and coal business operated from his home.

Upon the basis of income alone decedent undoubtedly was not of " sufficient ability " to support the daughter, Jean, and her children. The problem is the effect of the existence of the bank account. The law itself is very indefinite. Section 101 of the Social Welfare Law directs that (subd. 1) " The husband, wife, father, mother, grandparent, child or grandchild of a recipient of public assistance or care or of a person liable to become in need thereof shall, if of sufficient ability, be responsible for the support of such person." The term " sufficient ability " has been frequently used by the Legislature to impose a family responsibility for the care and support of indigent and incompetent persons. (Code Crim. Pro. §§ 914, 926-b; Mental Hygiene Law, §§ 24-a, 80; N. Y. City Dom. Rel. Ct. Act, § 101, specifying " sufficient means " [L. 1933, ch. 482].) In the generality of its language the Legislature has recognized the difficulty of applying a legislative yardstick to the subject and has manifested the intention that each case be adjudicated upon its merits after a consideration of its own particular facts and circumstances. (*Matter of Hessney,* 177 Misc. 781, 786.) The problem necessarily resolves itself into a question of fact, a determination of which lies largely in the discretion of the court. (*Matter of Conklin,* 78 Misc. 269; *City of New York* v. *Wasserman,* 196 N. Y. S. 325.)

In applying the law to the individual case the decisions have sometimes appeared to be somewhat at variance but a general trend is apparent. The phrase " of sufficient ability " has been defined as " where a man has sufficient for his own needs and has something over and above ". (*Copeland* v. *Weber,* 175 Misc. 403, 405.) In considering how much a man does require for his own needs it has been frequently recognized that he is entitled, not only to enough for the immediate support of himself and his dependents, but also to reasonable savings for sickness and old age. (*City of New York* [*Sullivan*] v. *Sullivan,* 246 App. Div. 55, 56; *Matter of Cross,* 99 Misc. 199, 201; *Anonymous* v.

*Anonymous,* 20 N. Y. S. 2d 30, 34.) He will not be compelled to contribute capital accumulated for such purposes or capital which produces income necessary for his livelihood, if by so doing he will impoverish himself. (*Matter of Bauer* [*Byrne*], 266 App. Div. 816, affd. 291 N. Y. 711; *Matter of Tarantino,* 183 Misc. 288; *Matter of Willis,* 94 Misc. 29; *In re Claiborn's Estate,* 51 N. Y. S. 2d 543.)

In the light of these authorities and in the considered judgment of the Surrogate decedent was not of sufficient ability to support his daughter, Jean Kennedy, and her children. Saving for sickness and old age should be encouraged. Such savings in reasonable amounts should not be forcibly invaded for the support of adult children and their issue. Under the circumstances $7,000 cannot be said to be more than decedent would require as a reserve for sickness, old age and the burial expenses of himself and his wife. His income was at a mere subsistence level and afforded little hope of further savings. His earnings depended entirely on his own labor and were dependent upon the state of his health. He was in no position to contribute a substantial part of what he possessed for the support of adult children and their issue. The claim is disallowed and the objections overruled. Account settled. Proceed accordingly.