NATIONAL CITY BANK OF NEW YORK, as Executor of ROSE VERTUN, Deceased, Plaintiff, *v.* CURT LOEWENSTEIN, Defendant.

Supreme Court, Trial Term, Kings County, March 10, 1950.

*Harry B. Richard* and *Arthur M. Laufer* for plaintiff.

*Sol H. Cohn* for defendant.

NORTON, J. The plaintiff herein is the executor of the estate of Rose Vertun, deceased, who was the mother of Fannie Loewenstein, otherwise known as Fannie Vertun. The defendant was the husband of Fannie Loewenstein.

It appears that on the 25th day of November, 1940, Fannie Vertun Loewenstein was committed to the Brooklyn State Hospital as an alleged incompetent and later transferred to the Kings Park State Hospital, where she is still an inmate. It does not appear from the evidence that the defendant husband ever paid or contributed any money toward her care, treatment and maintenance in the State mental institutions from

the time of her commitment up to and including the 19th day of July, 1945. While defendant was in the United States military service the Government made a payment on his behalf to said institution for such treatment and maintenance in the sum of $300. Rose Vertun, mother of Fannie Loewenstein, died on July 19, 1945, leaving an estate amounting to some $40,000. On February 18, 1946, the Kings Park State Hospital made a demand upon the plaintiff, as executor of the estate of said Rose Vertun, for payment of the sum of $3,346.84 on account of charges for the care, treatment and maintenance of Fannie Loewenstein, daughter of the deceased Rose Vertun, from November 25, 1940, to July 19, 1945. Upon receipt of said claim, the plaintiff, as executor, paid over to the Kings Park State Hospital the above sum of money.

Plaintiff, as executor of the estate of Rose Vertun, deceased, now seeks to be reimbursed by the defendant husband for such payment. The evidence does not indicate that any sum was fixed by the State hospital or by the department of Mental Hygiene for the care, treatment and maintenance of the incompetent prior to February 18, 1946, when the demand was made upon plaintiff for the payment of the above moneys or that any demand or claim was made upon the defendant for such payment, either by the Department of Mental Hygiene or the State institution. During the above period, to wit, November 25, 1940, to July 19, 1946, the defendant husband earned approximately $35 per week. On June 27, 1946, the defendant procured a final judgment of annulment of his marriage to Fannie Loewenstein, the incompetent, and this judgment directed the defendant husband to pay to the State hospital the sum of $15 a month for the care, treatment and maintenance of the incompetent. The sum of $3,346.84, demanded of and paid by the plaintiff, as executor of the estate of the mother of the incompetent, is based upon a rate of $60 a month for such maintenance and care. Subdivision 2 of section 24 of the Mental Hygiene Law provides in part: '' The husband, wife, father, mother and children of such patient, if such relatives are of *sufficient ability,* shall also be jointly and severally liable and responsible for such payments, any other provision or rule of law to the contrary notwithstanding.'' (Italics supplied.)

The rule as to the duty of the husband to support his incompetent wife seems to be that the husband is liable for the support of his incompetent wife if he is financially able, or unless it would be inequitable to compel him to furnish support. The husband's ability to furnish support is thus made a condition

to the obligation and a husband will not be charged for his incompetent wife's support where such a requirement would be inequitable (*Matter of Fox,* 250 App. Div. 31).

I am of the opinion that it would be inequitable to require the defendant husband herein to pay for his wife's care and maintenance at the rate of $60 per month during the period in question. At the time of the entry of the judgment of annulment the financial circumstances and earning capacity of the defendant had not changed since the time of his wife's commitment and the hospital, through its counsel (the Attorney-General) consented at that time to the fixing of $15 a month as a reasonable sum for such care and maintenance. The defendant, therefore, will be required to reimburse the plaintiff herein in an amount representing the accumulation at the rate of $15 per month from the 25th day of November, 1940, to and including the 19th day of July, 1945, amounting to $834, less the sum of $300 paid to the hospital by the United States Government on behalf of the defendant herein, leaving a balance of $534, and judgment will be directed for the said latter sum in favor of plaintiff and against defendant.