The ESTATE of William Everett HINDS, Deceased, an obligated relative, being the Father of Robert F. Hinds, patient at Madison State Hospital, Appellant-Defendant,

v.

STATE of Indiana, on the Relation of the UNDERSIGNED MENTAL HEALTH COMMISSIONER, Appellee-Plaintiff.

No. 1–1078A289.

Court of Appeals of Indiana, First District.

Sept. 17, 1979.

Charles W. Cooper, Cooper, Cox, Jacobs & Kemper, Madison, for appellant-defendant.

Theodore L. Sendak, Atty. Gen., David Michael Wallman, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

## ON PETITION FOR REHEARING

LYBROOK, Judge.

Upon petition for rehearing by the State of Indiana on the Relation of the Undersigned Mental Health Commissioner, we address the following issue raised by petitioner: whether Decedent's estate is liable for the cost of Son's maintenance at Madison State Hospital from March 5, 1951, until January 1, 1956, under the applicable statutes in force during that period of time. The State argues that these statutes gave the State no authority to waive any maintenance charges for that period and did not require the State to bill Decedent during his lifetime; therefore, Decedent cannot escape liability under the rationale of *State ex rel. Murray v. Estate of Riggens*, (1975) 164 Ind.App. 314, 328 N.E.2d 248. We cannot agree.

Our analysis in *Riggens* focused on whether the State had failed to follow the statutorily prescribed procedures under Ind. Code 16–14–18–1 *et seq.*, effective January 1, 1956, and, thus, whether the State had contravened legislative intent in attempting to collect from a decedent's estate as it did. A perusal of the legislative scheme which existed prior to January 1, 1956, and especially during the March 5, 1951, to January 1, 1956, period, reveals a legislative intent that billing be carried on, and collection actions be initiated, with the inception of the period of institutionalization.

The statutes at issue are Burns' Indiana Statutes §§ 22–401–408 (superseded January 1, 1956, by Acts 1955, ch. 339, Burns' Indiana Statutes §§ 22–409–418 and 22–5035 and 5036, now codified at Ind.Code 16–14–18–1 *et seq.*).

Prior to March 5, 1951, the statutes created liability for maintenance costs only in the patient, living or deceased, using the word "estate" to mean the assets of such patient, living or deceased. Reimbursement for such costs was to be collected quarterly by the institution, and first the administrator of the institution and later the attorney-general upon notification by the administrator was to bring suit against a patient who failed to pay. The statutes: 1) required the trial court clerk to notify the institution administrator of a patient's assets upon commitment; 2) created exceptions when a patient's assets were needed to support certain enumerated relatives either during the patient's life or after his death; 3) authorized the governor and attorney-general to agree to accept less than the amount due under the statutes if a patient's assets were insufficient or if the patient were likely to recover and would need his assets for support after his release; and 4) established procedures for adjudicating a claim against a living patient. Acts 1917, ch. 72, p. 176; Acts 1925, ch. 9, p. 19; Acts 1931, ch. 66, p. 152; Acts 1933, ch. 174, p. 882; Acts 1935, ch. 132, p. 476; Acts 1943, ch. 44, p. 100.

Thus, prior to March 5, 1951, the legislature clearly intended that patients be billed quarterly and that attempts be made to collect reimbursement for maintenance costs contemporaneously with the incurrence of those costs.

Immediately after March 5, 1951, the following legislative scheme was in effect under Burns' Indiana Statutes §§ 22–401–408, amended by Acts 1951, ch. 253, p. 716. Liability for maintenance costs was created in both the patient and certain designated relatives, including parents. Reimbursement was to be paid to the State quarterly or at the convenience of those charged with the costs. Upon a patient's commitment, the trial court clerk was to notify the institution administrator of available income and assets from which reimbursement could be sought.

The Indiana Council for Mental Health and the attorney-general were authorized to agree to accept less than the full amount due the State under the statutes if investigation showed that the income and assets of the patient and his designated relatives were insufficient to pay the full amount or needed for the support of a designated relative either during the patient's life or after his death. Procedures were also established for declaration of indigency and payment of costs by the township poor relief fund.

Acts 1953, ch. 130, p. 443, and Acts 1955, ch. 169, p. 415, made amendments and additions to the above scheme, stating, in part, that billing and collection of maintenance costs were to be done by the institution administrator, and that first the Indiana Council for Mental Health and later the Division of Mental Health could agree to defer collection, a factor in such decision being whether the income and assets were needed to support any member of the patient's family. If those persons who were liable neglected or failed to request such deferral, the attorney-general was empowered to relieve them from payment if they were financially unable to pay or if payment would work a hardship or would deprive the family of necessities. The attorney-general was also to bring suit, upon notification by the institution administrator, against those failing to pay.

This legislative scheme, in effect until superseded on January 1, 1956, like the schemes in effect prior to March 5, 1951, and subsequent to January 1, 1956, provides ample evidence that the legislature intended that those persons who were liable be billed regularly and that collection efforts by the State be instituted contemporaneously with the inception of institutionalization.

As in *Riggens, supra,* our reading of the statutes leads to the conclusion that, inasmuch as the State failed to follow the statutorily prescribed procedures to collect reimbursement for Son's maintenance costs for the period in question and, thus contravened legislative intent, no liability for that period accrued to Decedent during his lifetime and there can be no just claim against his estate for such costs.

The following language from *In re Mangan's Will,* (Sur., 1948) 83 N.Y.S.2d 398, 405–406, quoted in *Riggens,* 328 N.E.2d at 252, bears repeating:

"There are some cases which more or less turn on the fact of failure to assert a claim during the lifetime of a decedent relative whose estate is sought to be held liable. Examples of such cases are *Matter of Willis' Estate,* 1916, 94 Misc. 29, 158 N.Y.S. 985, affirmed 175 App.Div. 933, 161 N.Y.S. 1150; and *Matter of Cross' Estate,* 1917, 99 Misc. 199, 165 N.Y.S. 710. These cases hold that there was a waiver or estoppel by reason of failure to assert liability against the deceased relative in his lifetime. These cases seem equitable in holding that where the relative was never contacted during his lifetime, or, having been investigated, has in no matter concealed his assets, that the doctrine of estoppel should be recognized or waiver implied. Thus there would be no lulling the relative to sleep in a false sense of security, no possibly unfair advantage taken of him, perhaps after years of hard work resulting in a competence for his old age and a small potential residue for the benefit of his children after his death."

The disposition of this case remains that stated in the majority opinion, 390 N.E.2d 172, and the petition for rehearing is denied.

LOWDERMILK, P. J., and ROBERTSON, J., concur.